# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00023-CV

**The Texas Department of Transportation, and Amadeo Saenz, Jr., in his Official Capacity as Director of Texas Department of Transportation, Appellants**

**v.**

**Sunset Transportation, Inc.; MEL Transport, Inc. d/b/a Magnum Transportation; and Sunset Prosper, Inc., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-09-001874, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

The Texas Department of Transportation (TxDOT) and its executive director, in his official capacity, appeal a district court order denying, in its entirety, their plea to the jurisdiction over claims asserted by appellees Sunset Transportation, Inc.; MEL Transport, Inc. d/b/a Magnum Transportation, Inc.; and Sunset Prosper, Inc.[1] In a single issue, appellants assert that appellees' claims—which were asserted under the Uniform Declaratory Judgments Act (UDJA) and section 2001.038 of the Administrative Procedure Act (APA)—are each barred by sovereign immunity. We agree that appellees did not plead facts sufficient to invoke the district court's jurisdiction under APA section 2001.038. However, we conclude that appellees are entitled to the opportunity to replead those claims. In light of this holding, moreover, we further conclude that the

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).

district court reached the correct result in denying appellants' plea as to appellees' UDJA claims at this juncture. For these reasons, we affirm the district court's order.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges a trial court's authority to decide the subject matter of a specific cause or action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's live pleadings. *Id*. at 226. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Mere unsupported legal conclusions do not suffice. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515-16 & n.7 & 8 (Tex. App.—Austin 2010, no pet.). We must also consider evidence the parties presented below that is relevant to the jurisdictional issues, *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000), including evidence that a party has presented to negate the existence of facts alleged in the plaintiff's pleading. *See Miranda*, 133 S.W.3d at 227; *see also Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 719 (Tex. App.—Austin 2009, no pet.) (summarizing different standards governing evidentiary challenges to the existence of pled jurisdictional facts where such facts implicate both jurisdiction and the merits versus where they implicate only jurisdiction). Our ultimate inquiry is whether the plaintiff's pled and un-negated facts, taken as true, and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 513, 516 n.8. This is a

2

question of law that we review de novo. *See Miranda*, 133 S.W.3d at 22; *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 513, 516 n.8.

## REGULATORY CONTEXT

It is undisputed that each appellee is a motor carrier that engages in both interstate commerce and intrastate commerce within Texas. These facts implicate interrelated state and federal regulatory regimes that provide the context for appellees' claims and, ultimately, the jurisdictional issues on appeal. It is thus helpful to begin with a brief review of these laws before beginning our analysis of the pleadings and jurisdictional evidence.

In 2005, the United States Congress enacted a law known as the Unified Carrier Registration Act of 2005 (the UCR Act) creating a "Unified Carrier Registration" (UCR) system through which a motor carrier operating in interstate or international commerce submits a single registration fee and pays, through a designated "base state," a "UCR fee" in an amount determined based on the size of its vehicle fleet. *See* 49 U.S.C.A. §§ 14504a(a)(2) (West 2007), (f) (West 2007 & Supp. 2011). The system is implemented through an interstate agreement under which individual states so desiring can opt to participate in collecting UCR fees and in sharing fee revenues. *See id.* §§ 14504a(a)(2), (e), (f)(4), (g)-(h) (West 2007). Of chief relevance to this case, however, are provisions of the UCR Act that prohibit states—regardless of whether they have opted into fee-collection and sharing under the UCR system—from imposing certain additional regulatory burdens on the interstate motor carriers that would register under the UCR system. Congress determined that it was an "unreasonable burden upon interstate commerce" for a state or its agencies "to enact, impose, or enforce any requirement or standards with respect to, or levy any fee or charge on,"

3

interstate motor carriers in connection with registering their interstate operations with the state, the filing of information concerning their federally required financial responsibility, or the filing with the state of the name of their federally required agent for service of process. *See id.* § 14504a(c)(1)(A)-(C) (West 2007 & Supp. 2011). States were further prohibited from requiring any interstate motor carrier that also had intrastate operations to pay any tax or fee from which a purely intrastate carrier would be exempt. *See id.* § 14504a(c)(2) (West Supp. 2011).

Finally, and most importantly for this case, Congress prohibited states from "enact[ing], impos[ing], or enforc[ing] any requirement or standards with respect to, or levy and fee or charge on" motor carriers that conduct both interstate and intrastate business "in connection with . . . the annual renewal of the intrastate authority, or the insurance filings . . . or other intrastate filing requirement necessary to operate within the State," if certain conditions are met. *See id.* § 14504a(c)(1)(D) (West 2007). For this prohibition to apply, the motor carrier (1) must have satisfied certain federal registration requirements and (2) be "in compliance with the laws and regulations of the State authorizing the carrier to operate in the State in accordance with [49 U.S.C.] section 14501(c)(2)(A)." *See id.* Section 14501(c)(2)(A), in turn, provides that general federal preemption of state regulations "related to a price, route, or service of any [interstate] motor carrier . . . with respect to the transportation of property" does not:

> restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of the State to regulate motor carriers with regard to minimum amounts of financial responsibility related to insurance requirements and self-insurance authorization.

4

*Id.* § 14501(c)(2)(A) (West 2007). Additionally, section 14504a(c)(1)(D) exempts from preemption renewals of a motor carrier's intrastate operating authority to transport waste or household goods, conduct certain bus services, or provide non-consensual towing. *See id.* § 14504a(c)(1).

The UCR Act took effect in January 2007, and Texas opted into the UCR system through legislation effective on September 1 of that year. *See generally* Tex. Transp. Code Ann. §§ 645.001-.004 (West 2011) (delegating authority to, among other things, participate, "to the fullest extent practicable . . . in a federal motor carrier registration program under the unified carrier registration system . . . ."). At the same time, the Legislature amended the transportation code in an evident attempt to conform Texas law to the UCR Act's preemption provisions.

At all relevant times, chapter 643 of the transportation code has generally prohibited a motor carrier from operating a commercial motor vehicle on a road or highway of this state unless the carrier registers with the State (specifically, at the dispute's inception, TxDOT's motor vehicle division[2]) and obtains a registration certificate and, for each vehicle, a "cab card." *See* Tex. Transp. Code Ann. §§ 643.051, .054, .059 (West 2011). Such registrations must also be renewed periodically, generally on an annual basis. *See id.* § 643.058, .061 (West 2011). Additionally, motor carriers required to register under chapter 643 must, with respect to each vehicle requiring registration, maintain liability insurance or financial responsibility in an amount specified by the agency, which must not exceed the amounts required under federal law. *See id.* §§ 643.101(a), (b), .102 (West 2011). Proof of such insurance or financial responsibility must be filed at the time of initial registration, "at the time of a subsequent registration if the motor carrier

---

[2] *See infra* note 5.

was required to be continuously registered . . . and the carrier failed to maintain continuous registration," when the carrier changes insurers, and when the carrier changes ownership. *Id.* § 643.103(a) (West 2011); *see also id.* §§ 643.053(2) (West 2011) (application for initial registration must be accompanied by proof of insurance or financial responsibility as required by section 643.103), .058(c)(3) (motor carrier renewing registration must "provid[e] . . . evidence of continuing insurance or financial responsibility" in required amount). Fees may be assessed in connection with initial registration, renewal of registration, and insurance filings. *See id.* §§ 643.053(1), (3), .057, .058(c)(2), .061(b), .103(c). All of these general requirements have been implemented through rules, codified at relevant times in title 43, chapter 18 of the Texas Administrative Code. *See generally* 43 Tex. Admin. Code §§ 18.2-.76 (2010) (Tex. Dep't of Transp., Motor Carriers), *amended by* 34 Tex. Reg. 8286 (2009), *adopted* 35 Tex. Reg. 664 (2010) (codified as amended at 43 Tex. Admin. Code §§ 218.1-.77 (Tex. Dep't of Motor Vehicles, Motor Carriers)).

In response to the UCR Act, the Legislature amended section 643.002 of the transportation code to provide simply that "[t]his chapter does not apply" to "motor carrier operations exempt from registration by the Unified Carrier Registration Act of 2005 (49 U.S.C. Section 14504a)." *See id.* § 643.002(1) (West 2011). A few months later, TxDOT likewise promulgated proposed rule amendments to implement the UCR system and conform to the Act's preemption provisions. *See* 32 Tex. Reg. 9923-34 (2007) (to be codified at 43 Tex. Admin. Code §§ 18.1-.76) (proposed Dec. 28, 2007). The amendments as proposed ultimately took effect on April 17, 2009. *See* 32 Tex. Reg. 9923-34 (2007), *adopted* 33 Tex. Reg. 2978-81 (2008) (codified

6

at 43 Tex. Admin. Code §§ 18.1-.76).  New or amended provisions that are material to this appeal included a requirement that interstate carriers operating in Texas "register and comply with provisions of the [UCR] System as required by 49 U.S.C. 14504(a) [sic]," 43 Tex. Admin. Code § 18.18(b), an exclusion of "motor vehicle[s] exempt from registration by the Unified Carrier Registration Act of 2005" from the "commercial motor vehicle[s]" required to be registered with TxDOT, *see id.* §§ 18.2(6)(B)(viii), .11(a), and a new subsection titled "Interstate motor carrier operating in intrastate commerce" that was added to the rule governing expiration and renewals of state motor carrier registrations:

> (1) An interstate motor carrier registered under § 18.18 of this chapter [i.e., UCR] is not required to renew a certificate of registration issued under § 18.11 of this chapter [the general requirement that motor carriers register with TxDOT] except when the motor carrier is operating commercial motor vehicles as a
>
>> (A) charter bus carrier;
>> (B) for-hire household goods carrier; or
>> (C) recyclable materials or waste carrier.
>
> (2) If a motor carrier that registered under § 18.18 of this chapter [UCR] does not maintain continuous motor carrier registration under § 18.11 of this chapter, the motor carrier must file an application under § 18.13 of this chapter [the general requirements and procedures for original registration as a motor carrier with TxDOT, including fees and proof of insurance requirements] to operate on public streets and highways in this state.

*Id.* § 18.14(c); *see id.* §§ 18.11, 18.13, 18.15-.16.[3] The rule amendments did not alter preexisting requirements that motor carriers "file and maintain proof of automobile liability insurance for all vehicles required to be registered . . . at all times." *Id.* § 18.16(e)(1)(A); *see also id.* § 18.16(e)(2) (requiring proof-of-insurance filing at time of original registration application, on or before cancellation date of insurance coverage, whenever the motor carrier changes insurers, whenever the motor carrier changes its name, whenever the motor carrier changes the classification of the cargo being transported, and when "replacing another active insurance filing").

## THE RECORD

The record in this case consists of appellees' live pleading at the time of the hearing on appellants' plea to the jurisdiction[4] and evidence presented by appellees both during the hearing and as exhibits to their response in opposition to appellants' plea. This evidence includes documentary evidence and both affidavit and live testimony from Erick Smith, an officer with a company that handles appellees' regulatory filings. Appellants challenged only the sufficiency of appellees' pleadings; they did not attempt to negate the existence of any pled facts with evidence nor presented evidence to controvert that presented by appellees. Consequently, we must take as true appellees' factual allegations and evidence. *See Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 513, 516 n.8.

---

[3] TxDOT also added a statement to the preamble of its registration rules recognizing that transportation code chapter 643 prohibits motor carriers from operating commercial motor vehicles on a Texas road or highway "unless the carrier registers with the department *or is exempt from registration under Transportation Code §643.002*." 32 Tex. Reg. 9923, 9927 (codified at 43 Tex. Admin. Code § 18.10) (emphasis added).

[4] Their third amended original petition.

Appellees' pleadings and evidence reflect that each entity is a Texas corporation, with a principal place of business in this state, and the record further indicates that the corporations are affiliated or related. Each company, moreover, is a motor carrier that operates in Texas in both interstate and intrastate commerce, and none has operated intrastate within the categories of intrastate operations that are excluded from the UCR Act's preemption of state registration renewal requirements, *see* 49 U.S.C.A. § 14504a(c)(1).

Before the UCR Act took effect in 2008, according to Smith, appellees had registered with TxDOT as motor carriers. After UCR went into effect, appellees' pleadings and evidence indicate, appellees had each registered under the UCR system. The documentary evidence reflects, and appellees acknowledge, that TxDOT revoked the state registration of Sunset Transportation during the summer of 2008. However, it is not this revocation that is the immediate focus of appellees' claims for relief.

In their pleadings, appellees complain that TxDOT is requiring "UCR registered interstate motor carriers who also operate[] in intrastate commerce . . . to maintain active insurance filings with TXDOT at all times, to re-register with TXDOT and to pay applicable fees to the State, all in contradiction to the UCR Act and the Texas Transportation Code."[5] In appellees' view,

---

[5] After appellees filed suit but before the hearing on appellants' plea to the jurisdiction, the state functions implicated by appellees' allegations were transferred from TxDOT to the newly created Texas Department of Motor Vehicles (DMV). *See* Act of May 23, 2009, 81st Leg., R.S., ch. 933, §§1.01-11.01, 2009 Tex. Gen. Laws 2485-522; *see also* 34 Tex. Reg. 8286 (2009), *adopted* 35 Tex. Reg. 664 (2010) (codified at 43 Tex. Admin. Code §§ 218.1-.77) (DMV rules that generally track the TxDOT motor carrier registration rules discussed herein). The Legislature provided that, effective November 1, 2009, "all powers, duties, obligations, and rights of action of the Motor Vehicle Division . . . of the Texas Department of Transportation are transferred to the Texas Department of Motor Vehicles" and that "the Texas Department of Motor Vehicles shall

section 643.002 of the transportation code and the UCR create an exemption for and/or preempt these state registration, insurance, and fee requirements with respect to interstate motor carriers within UCR's scope.  Appellees allege that their business operations are being impeded by being required to "re-register" with TxDOT, maintain active insurance filings, and pay related fees as a condition of operating intrastate in Texas, and that TxDOT has been "threatening administrative penalties and fines" and "harass[ing] the plaintiffs with bogus records requests" in connection with "registration violations" that are premised on TxDOT's erroneous view of those requirements.  Appellees seek the following declarations:

- "that the [TxDOT] policy of requiring UCR registered interstate motor carriers who may also operate in intrastate Texas commerce to maintain active insurance filings with [TxDOT] at all times and/or re-register and submit applicable fees to re-activ[ate] a revoked [TxDOT] motor carrier certificate of registration, is invalid because it seeks to amend the law as made and provided by the Legislature through an administrative process," is "an excessive exercise

continue in any proceeding involving the Motor Vehicle Division, the Vehicle Titles and Registration Division, or the portion of the Motor Carrier Division . . . that was brought before the effective date of this act in accordance with the law in effect on the date the proceeding was brought, and the former law is continued in effect for that purpose." Act of May 23, 2009, 81st Leg., R.S., ch. 933, §§ 6.01(a), (d), 2009 Tex. Gen. Laws 2519-20.

Although the DMV and its executive director would appear, as a formal matter, to have succeeded to the interests of TxDOT and its executive director in this litigation, the Attorney General continued to prosecute the plea to the jurisdiction in the names of TxDOT and its executive director, the district court's order refers only to these defendants, and the Attorney General has pursued this appeal solely in their names.  In an apparent abundance of caution, appellees joined the DMV as an additional defendant, alleging that the new agency has continued to interpret and enforce the state registration and filing requirements in the same manner TxDOT had.  Neither side contends that the distinction between the predecessors and successors has any substantive implications for this appeal.  For this reason, and because the events giving rise to the underlying dispute involved actions by TxDOT, we have, for clarity, continued to identify the relevant state actors as TxDOT and its executive director, as the parties have, and similarly cite to the versions of relevant rules that referenced TxDOT rather than the DMV.

10

of the power vested in [TxDOT]," and "goes beyond the statutory authority to regulate interstate carriers and insurers."

- "that [TxDOT] [is] acting beyond [its] statutory authority in requiring insurance filings, registrations, and fees, for interstate carriers registered under the UCR who may operate in intrastate commerce."

- that "[TxDOT] [is] preempted by federal law from requiring interstate carriers registered under the UCR from making insurance filings or renewing intrastate authority."

Appellees additionally seek temporary and permanent injunctive relief restraining appellants "from requiring insurance filings from interstate motor carriers registered under the UCR, from conducting investigations of intrastate movements of interstate motor carriers registered under the UCR, and from issuing violation reports or assessing fines to interstate motor carriers properly registered under the UCR concerning intrastate movement."

Appellees purport to assert their claims under the limited waiver of sovereign immunity provided in the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.009 (West 2009); *see Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633-34 (Tex. 2010) (recognizing that section 37.006(b) of the UDJA waives the State's sovereign immunity to the extent of permitting suits for declarations as to the construction or validity of a state statute), but ultimately must rely upon the "ultra vires" exception to sovereign immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 369-77 (Tex. 2009) (explaining that sovereign or governmental immunity does not bar suits against governmental officers in their official capacity for prospective relief to restrain acts outside their discretionary legal authority); *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 514-16 (recognizing "that an otherwise proper UDJA claim seeking to construe or invalidate a statute is nonetheless barred by sovereign immunity if the remedy would

11

have the effect of establishing a right to relief against the State that implicates sovereign immunity and for which immunity has not been waived," including an ostensible "ultra vires" claim that actually seeks to control state action). In this regard, appellees allege that TxDOT's executive director "has acted ultra vires of the applicable laws regarding registration and insurance filings[,] for which no immunity exists." Appellees also request attorney's fees as the UDJA permits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

Appellees additionally invoke section 2001.038 of the APA. APA section 2001.038 waives sovereign immunity to the extent of creating a cause of action for declaratory relief regarding the "validity" or "applicability" of a "rule" if "it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038(a) (West 2008); *see Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.) ("section 2001.038 is a grant of original jurisdiction and, moreover, waives sovereign immunity"). As for the TxDOT "rule" that is under challenge, appellees allege that "in June 2008 TxDOT revised its policy or rules concerning UCR registered interstate motor carriers who also operated in interstate commerce to require those carriers to maintain active insurance filings with TXDOT at all times, to re-register with TXDOT and to pay applicable fees to the State." This allegation refers to a TxDOT document, purportedly published on the agency's website and in evidence, titled, "**Important Notice for UCR Registered Interstate Motor Carriers Also Operating in Intrastate Texas Commerce**," and indicating "**REVISED—JUNE 25, 2008**" and "**EFFECTIVE IMMEDIATELY**."

12

This document (hereinafter, the "2008 Revised Notice") states that its "purpose is . . . to provide instructions to Interstate Motor Carriers who are currently registered under the Unified Carrier Registration (UCR) Agreement and that also operate in Intrastate Texas Commerce to convert existing TxDOT Registration to a non-expiring certificate," and that it applied to "Interstate Motor Carriers also operating in Interstate Texas Commerce" that had a current U.S. Department of Transportation number, are currently registered under UCR, and whose intrastate operations did not consist of household goods, charter bus, or waste transportation. (Those categories of carriers, the document indicated, "must continue to renew TxDOT registration.") The 2008 Revised Notice then provided instructions for "converting," via a website or hard copy and mail, an existing TxDOT motor carrier certificate of registration to a "UCR/Intrastate certificate" that "will not expire" as long as the motor carrier remains registered with UCR and its intrastate operations do not include household goods, charter bus, or waste transportation. Upon conversion, the document further advised, TxDOT would provide a "new certificate and insurance cab card" indicating UCR registration. The 2008 Revised Notice additionally indicated that "No fees are required for activating an expired TxDOT Certificate and the existing TxDOT Number will be retained." However, at the bottom of the page was printed, in bold:

**All motor carriers must maintain active insurance filing with TxDOT at all times.**

**Motor Carriers are required to re-register and submit applicable fees to re-activate a revoked TxDOT Motor Carrier Certificate of Registration**.

Appellees contrast the 2008 Revised Notice with an earlier TxDOT document, similar in form, dated September 10, 2007, and titled, "**Important Notice for Motor Carriers**" (hereinafter

13

the "2007 Notice"). The 2007 Notice stated that its "purpose . . . is to inform motor carriers of the latest requirements associated with the Unified Carrier Registration Act of 2005" and provided a chart explaining registration and filing requirements applicable to various categories of motor carrier operations. The chart, in relevant part, instructed that: (1) motor carriers that operated interstate were required to register with UCR and to comply with the Federal Motor Carrier Safety Administration (FMCSA) requirements, (2) motor carriers that operated exclusively intrastate were required to register with TxDOT, (3) interstate carriers that also operated intrastate as charter bus carriers, non-consent tow-truck carriers, for-hire household goods carriers, or waste carriers were required to register with both UCR and TxDOT and comply with the FMCSA requirements, and (4) other interstate carriers that also operated intrastate (e.g., appellees) were required to do the following:

- Comply with FMCSA requirements (http://www.fmcsa.dot.gov/); AND

- Register with UCR (http://www.ucr.in.gov/).

**IMPORTANT NOTE**:    All first time registrants in this category must also register with TxDOT as a motor carrier.

Appellees interpret the 2007 Notice as advising them that, having previously registered with TxDOT in years past, they were no longer required to comply with any state registration or insurance requirements or pay related fees, but needed merely to register under UCR and comply with FMCSA requirements. They assert that this interpretation was "consistent with the statutory language of the UCR and Chapter 643 of the Texas Transportation Code." Additionally, Smith testified that as late as the summer of 2008, but sometime before the

14

2008 Revised Notice, TxDOT had conducted an investigation of Sunset Transportation's registration and that the individual investigator had concluded that the company was properly registered.[6] By subsequently changing "its policy and rules" to require "active insurance filings . . . at all times" and re-registration and fees when state registration certificates are revoked, as reflected in the 2008 Revised Notice, appellees complain that TxDOT acted contrary to section 643.002 of the transportation code and the UCR Act.[7]

## ANALYSIS

In their plea to the jurisdiction, appellants asserted that sovereign immunity barred appellees' suit, that APA section 2001.038 did not waive such immunity because appellees had failed to identify any "rule" that they were challenging, that appellees had not alleged facts that would invoke the district court's jurisdiction via the "ultra-vires" exception to sovereign immunity, and that appellees' UDJA claims would be a redundant remedy and mere vehicle for recovering attorney's fees if it turned out that appellees had invoked the court's jurisdiction through their APA claim. The district court's order denying the plea did not elaborate on its reasoning, nor were findings of fact and conclusions of law requested or made. On appeal, appellants bring forward essentially the same grounds for dismissal on which they relied below.

---

[6] Smith also claimed that the TxDOT investigator furnished the company with a copy of the 2007 Notice at the time.

[7] Appellees also suggest that TxDOT was targeting them specifically when it issued the 2008 Revised Notice, and there does appear to be some correlation between the dates of the investigation and when the notice issued.

15

To determine whether appellees have asserted a valid ultra vires claim that invokes the district court's subject-matter jurisdiction, we would construe the provisions of the transportation code and UCR Act that define the scope of TxDOT's legal authority, apply them to the facts that appellees have alleged, and ascertain whether those facts constitute acts beyond TxDOT's legal authority. *See Heinrich*, 284 S.W.3d at 372-73 (ultra vires suit "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act"); *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 516 n.8 (quoting *Hendee v. Dewhurst*, 228 S.W.3d 354, 368-69 (Tex. App.—Austin 2007, pet. denied) (when analyzing whether plaintiff has alleged ultra vires acts, we construe the relevant statutory or constitutional provisions that define the governmental actor's discretionary authority, apply the provisions to the pled and un-negated facts, and determine whether those facts fall within or outside that authority). Appellees emphasize that they explicitly pled that TxDOT or its executive director acted "ultra vires" or contrary to their legal authority. However, merely asserting legal conclusions or labeling a defendant's actions as "ultra vires," "illegal," or "unconstitutional" does not suffice to plead an ultra vires claim—what matters is whether the *facts* alleged constitute actions beyond the governmental actor's statutory authority, properly construed. *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 515-16 & nn.7-8. To this extent, the jurisdictional inquiry with respect to appellees' purported ultra vires claims would substantially overlap with the claims' merits. *Id.* at 516 n.8.

In contrast to appellees' UDJA claims, which are ultimately predicated upon the ultra vires exception, appellees' claims under APA section 2001.038 invoke the district court's

subject-matter jurisdiction if appellees have challenged the "validity" or "applicability" of a "rule" under the APA and they allege that "the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038(a); *see Texas Logos, L.P.*, 241 S.W.3d at 123. Determining whether appellees have done so, unlike with our analysis of appellees' ultra vires claims, does not require us to delve into the merits of the claims, *see Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 903 (Tex. App.—Austin 2009, no pet.)—nor would such an inquiry be proper. *See Bland Indep. Sch. Dist.*, 34 S.W.3d 547; *Hendee*, 228 S.W.3d at 366. Consequently, we should begin with section 2001.038's narrower jurisdictional inquiry.

Appellees have alleged that the 2008 Revised Notice is invalid because it violates the limitations on TxDOT's regulatory powers imposed by transportation code section 643.002 and the UCR Act. These factual allegations suffice to invoke the district court's subject-matter jurisdiction *if* the 2008 Revised Notice is a "rule" within the meaning of the APA. *See, e.g.*, *Combs v. City of Webster*, 311 S.W.3d 85, 100-01 (Tex. App.—Austin 2009, pet. denied) (recognizing that "[t]o the extent that no rule as defined by the APA is at issue, section 2001.038 does not provide any basis for the district court's jurisdiction over appellees' declaratory judgment action"). Appellants argue that the 2008 Revised Notice is not a "rule" because it merely restates requirements already prescribed in TxDOT's formally promulgated rules.

A "rule" under the APA:

(A)     means a state agency statement of general applicability that:

(i)     implements, interprets, or prescribes law or policy; or

17

(ii)    describes the procedure or practice requirements of a state agency;

(B)    includes the amendment or repeal of a prior rule; and

(C)    does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

Tex. Gov't Code Ann. § 2001.003(6) (West 2008). This definition obviously encompasses state agency statements formally promulgated in compliance with the APA's notice-and-comment rulemaking procedures, *see id.* §§ 2001.021-.036 (West 2008), but it extends beyond these. *See, e.g.*, *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714-15 (Tex. 2008) (holding that agency rate-calculation procedure, ostensibly an "interpretation" of its formally promulgated rules, was itself a "rule" that was invalid because adopted without complying with APA's notice-and-comment procedures). Under certain circumstances, this Court has held that agency pronouncements that advise third parties regarding applicable legal requirements, as did the 2008 Revised Notice, may be "interpretations" of law that constitute "rules" under the APA. *See Entertainment Publ'ns, Inc.*, 292 S.W.3d at 720-22; *Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex.*, 997 S.W.2d 651, 657-58 (Tex. App.—Austin 1999, pet. dism'd w.o.j.); *see also First Fed. Sav. & Loan Ass'n v. Vandygriff*, 639 S.W.2d 492, 498-99 (Tex. App.—Austin 1982, writ dism'd w.o.j.). Precisely when those circumstances exist has sometimes been difficult to discern under the relevant case law.[8] One thing that can be said with

---

[8] *See, e.g.*, Ron Beal, *Substantive and Interpretive Rules: The Judiciary Continues to Struggle to Define Them and to Determine Their Legal Validity and Effect*, 12 Tex. Tech Admin. L.J. 55, 59-66 (2010).

18

relative certainty, however, is that an informal agency statement that does no more than restate its own formally promulgated rules would not in itself be a "rule."

That a "rule" must be more than a restatement of a formally promulgated rule is implicit in the APA's requirement that a "rule" have some legal effect on private persons and not merely impact the "internal management or organization of a state agency." Tex. Gov't Code Ann. § 2001.003(6)(C). Recognizing this, we have consistently held that an agency statement interpreting law must bind the agency or otherwise represent its authoritative position in matters that impact personal rights. *See Salazar*, 304 S.W.3d at 905 ("[a]gency statements that 'have no effect on private persons' are not considered rules") (quoting *Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 770 (Tex. App.—Austin 1999, no pet.)); *Entertainment Publ'ns, Inc.*, 292 S.W.3d at 722 (emphasizing that legal interpretation in Comptroller's letters would bind agency employees and "unambiguously express[ed] an intent to apply this interpretation . . . in all future cases" involving similar facts); *Amusement & Music Operators of Tex.*, 997 S.W.2d at 658 (agency memoranda to its law enforcement agents held to constitute "rules" on that record where there was evidence that agents "not only intend to enforce, but have enforced administrative sanctions" in accordance with memoranda); *see Brinkley*, 986 S.W.2d at 770 (observing that agency advisory opinion regarding applicable law would have no legal effect "absent a statute that so provides or some attempt by the agency to enforce its statement against a private person"). An agency statement that merely restated a formally promulgated rule would not meet this test because it would be the underlying rule, not the agency's restatement of it, that had legal effect. This Court has previously concluded as much. *See Texas Mut. Ins. Co. v. Vista Cmty. Med. Ctr., L.L.P.*, 275 S.W.3d 538, 556 (Tex. App.—Austin

2008, no pet.) ("The 2005 Staff Report did not affect private rights because it did not change or amend" a formally promulgated rule).

This conclusion is also consistent with the second element of the APA's "rule" definition, which provides that a "rule" "includes the amendment or repeal of a prior rule." Tex. Gov't Code Ann. § 2001.003(6)(B). Although "includes" is a term of enlargement rather than exclusion or limitation,[9] such that not all "rules" amend or repeal other rules, this indicia of a "rule" is nonetheless illustrative of the types of agency actions that would have legal effect on private persons, as contemplated by the third element. Agency statements that merely restated rules would have no such effect, and would not themselves be "rules."

Although distinguishing a mere restatement of a formally promulgated rule from a statement that is itself a "rule" might prove more elusive in other circumstances, *see Vista Cmty. Med. Ctr., L.L.P.*, 275 S.W.3d at 555-56, its application is straightforward in this case. Appellees complain of the portion of the 2008 Revised Notice stating that motor carriers whose state registrations have been revoked "**are required to re-register and submit applicable fees**." This statement tracks TxDOT's rule providing that "[i]f a motor carrier that registered under § 18.18 of this chapter [UCR] does not maintain continuous motor carrier registration under § 18.11 of this chapter, the motor carrier must file an application under § 18.13 of this chapter to operate on public streets and highways in this state." 43 Tex. Admin. Code § 18.14(c); *see id.* § 18.13 (registration requirements, including applicable fees and proof of financial responsibility); *see also*

---

[9] Tex. Gov't Code Ann. § 311.005(13) (West 2005) ( "'[i]ncludes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded").

20

*id.* §§ 218.14(c)(2), .13. Appellees also complain about the notice's statement that "**All motor carriers must maintain active insurance filing with TxDOT at all times.**" This statement, likewise, tracks TxDOT's rules. *See* 43 Tex. Admin. Code § 18.16(e)(1)(A) (motor carriers must "file and maintain proof of automobile liability insurance for all vehicles required to be registered . . . at all times"); *see also id.* § 218.16(e)(1)(A). We agree with appellants that the 2008 Revised Notice merely restates TxDOT's formally promulgated rules and, thus, is not itself a "rule" under the APA. Because appellees have alleged only this "rule" as the basis for their claims under APA section 2001.038, they have failed to invoke the district court's subject-matter jurisdiction through that statute. *See City of Webster*, 311 S.W.3d at 100-01.

On the other hand, the foregoing analysis also reveals that appellees' claims necessarily implicate the substantive validity of the underlying formally promulgated TxDOT rules, or, alternatively, the applicability of the underlying rules in light of the rules' exclusion of "motor vehicle[s] exempt from registration by the Unified Carrier Registration Act of 2005" from the "commercial motor vehicle[s]" required to be registered with TxDOT. The Texas Supreme Court has instructed us that if a claimant's pleadings omit sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of "pleading sufficiency, and the plaintiffs should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226-27. This is such a case. The substance of appellees' claims seek declarations regarding the validity or applicability of TxDOT's formally promulgated rules. APA section 2001.038 confers subject-matter jurisdiction on the district court to determine such claims. To cure the existing jurisdictional defect, appellees need only add

21

allegations to the effect that the "rule" or "rules" they are challenging are TxDOT's formally promulgated rules instead of the 2008 Revised Notice. Accordingly, we will, at this juncture, affirm the district court's order denying appellants' plea to the jurisdiction as to appellees' section 2001.038 claims without prejudice to appellants re-urging their plea once appellees have had a reasonable opportunity to amend their pleadings to cure the jurisdictional defect.[10]

Assuming that appellees replead under section 2001.038, we agree with appellants that appellees' UDJA claims would be redundant remedies to the extent they complain about TxDOT's imposition of requirements related to insurance or re-registration for motor carriers whose prior registration has been revoked. In that event, appellees' UDJA claims regarding those requirements would be subject to dismissal. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 200 (Tex. 2007) (declaratory-judgment action will not be entertained if another pending action between the same parties may adjudicate the same issue); *Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied); *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex. App.—Austin 1998, pet. denied); *Ben Robinson Co. v. Texas Workers' Comp. Comm'n*, 934 S.W.2d 149, 153 (Tex. App.—Austin 1996, writ denied). But this repleading has not occurred yet, and we conclude that the district court reached the correct result in declining to dismiss appellees' UDJA claims at this juncture, pending appellees' opportunity to replead their section 2001.038 claims. Although appellants urge us to

---

[10] To the extent appellees' complaints regarding the 2007 Notice are intended to sound in estoppel, appellees will likewise have the opportunity to replead any facts they can assert in good faith to meet the high burden for such a claim. *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 774-75 (Tex. 2006).

proceed with an analysis of whether appellees have alleged ultra vires acts, at the present time it is unnecessary and would be premature for us to reach these questions, which would effectively decide the merits of appellees' putative section 2001.038 claims. *See Salazar*, 304 S.W.3d at 903; *see also Bland Indep. Sch. Dist.*, 34 S.W.3d 547; *Hendee*, 228 S.W.3d at 366.

However, appellees' UDJA claims are also predicated upon alleged TxDOT actions beyond those that are the subject of their section 2001.038 claims. Liberally construing appellees' factual allegations, as we must do, *see Miranda*, 133 S.W.3d at 226, they claim that TxDOT is requiring motor carriers that have already validly registered with it and whose registrations have not been revoked to re-register, pay related fees, and also submit annual filings of proof of financial responsibility. Such conduct would run afoul of the UCR Act and, thus, transportation code section 643.002.[11] Consequently, these allegations would invoke the district court's subject-matter

---

[11] *See* 49 U.S.C.A. § 14504a(a)(9), (d) (West 2007). The entity that administers the UCR system, a joint state-industry body known as the UCR Plan Board of Directors, has published "informal guidance" explaining the relationship between section § 14504a(c)(1) and section 14501(c)(2)(A) as follows:

- A state shall not "[r]equire an interstate motor carrier . . . of property, to *renew* or charge a fee to renew its intrastate authority or insurance filings or any other filings required of an intrastate carrier," except with regard to carriers that transport waste or household goods, certain bus operations, and non-consensual towing. Unified Carrier Registration Plan Board of Directors, *The Unified Carrier Registration Act of 2005 Informal Guidance for Interested Parties*, *available at* http://www.wutc.wa.gov/webimage.nsf/0/421868d1f06cf30888257361005ffbe4/$FILE/ATT70RBR/UCR%20Questions%20and%20Answer%20Document%201-30-08.pdf (emphasis in original).

- A state may, however, "[r]equire an interstate carrier to complete the application requirements, including the fees and proof of insurance coverage, for an *initial* application for interstate operating authority." *Id.* (emphasis in original).

23

jurisdiction under the ultra vires exception to sovereign immunity. *See Heinrich*, 284 S.W.3d at 372-73. The district court did not err in denying appellees' plea as to these claims.

## CONCLUSION

For the reasons we have explained, we affirm the district court's order denying appellants' plea to the jurisdiction.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 19, 2011

---

• The UCR Act "has taken . . . away from the States" enforcement of financial responsibility laws with regard to filing proof of financial responsibility." "However, a State may enforce its laws requiring liability coverage for any vehicle operating on the State's public ways. In other words, if an interstate motor carrier is found to be operating on a State's highways without liability insurance coverage, the State may take an action against that motor carrier." *Id.* at 11.

• A state may not require "an annual insurance or surety bond filing by an interstate motor carrier that is operating under an intrastate authority from the State." That is, "[a] State may require the insurance of surety bond filing as part of the initial issuance of the intrastate authority, but under § 14504a, not annually thereafter. A State may require the insurance company or surety company providing such coverage to notify the State whenever the coverage is cancelled or not renewed. Additionally, nothing in the UCR Act prohibits a State from verifying the coverage as part of its internal review process of intrastate motor carriers." *Id.*