

# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

May 16, 2018

Mr. J. Winston Krause
Chairman
Texas Lottery Commission
Post Office Box 16630
Austin, Texas 78761-6630

Opinion No. KP-0202

Re: Whether the rights that a grandfathered bingo commercial lessor holds under a commercial lessor license may be transferred to another entity under the license transfer provisions of the Bingo Enabling Act (RQ-0199-KP)

Dear Chairman Krause:

You ask about whether a grandfathered bingo commercial lessor licensee may transfer certain rights under the Bingo Enabling Act ("Act").[1]

As background, you tell us grandfathered licenses originated with the 1989 passage of House Bill 2260. *See* Request Letter at 1. House Bill 2260 amended the Act to provide that newly-licensed commercial lessors may directly lease to only one bingo conductor organization. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 238, § 8(n), 1989 Tex. Gen. Laws 1107, 1114. House Bill 2260 also provided that

> a person who was licensed as a commercial lessor on June 10, 1989, whose license has been kept in effect since that date, and who is otherwise eligible for the license may renew the license as a commercial lessor of bingo premises according to the terms of the license as those terms existed on June 10, 1989.

Act of May 29, 1989, 71st Leg., R.S., ch. 238, § 8(o), 1989 Tex. Gen. Laws 1107, 1114. Under House Bill 2260, a commercial lessor subject to this grandfathering provision could "renew the license to provide for not more than the same number of licensed authorized organizations to conduct bingo on the premises as was provided by the license on June 10, 1989," but the Legislature removed this language in 1993. Act of May 29, 1989, 71st Leg., R.S., ch. 238, § 8(p), 1989 Tex. Gen. Laws 1107, 1114; *amended by* Act of May 6, 1993, 73d Leg., R.S., ch. 286, §§ 6, 26, 1993 Tex. Gen. Laws 1325, 1327, 1335; *see* Request Letter at 2. You state that in 1995 the Legislature amended the Act to limit the number of licensed authorized organizations that may

---

[1]*See* Letter from Mr. J. Winston Krause, Chairman, Tex. Lottery Comm'n, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Dec. 7, 2017), https://texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

conduct bingo at any bingo premises to seven. Request Letter at 2; *see* Act of May 29, 1995, 74th Leg., R.S., ch. 1057, § 7, 1995 Tex. Gen. Laws 5222, 5225; *see also* TEX. OCC. CODE § 2001.402(c). You explain that as a result "a Grandfathered Lessor . . . may lease directly to (and collect up to $600 rent per bingo occasion from) up to seven licensed bingo conductor organizations, in contrast to a non-grandfathered commercial lessor licensee who may lease directly only to one such organization." Request Letter at 2 (footnotes omitted). You also inform us that historically the Lottery Commission ("Commission"), through its Charitable Bingo Operations Division,[2] considered the grandfathered right to lease directly to seven organizations transferrable to a new licensee. *Id.* With this context, you ask five questions about the transfer of a grandfathered commercial lessor license. *See id.* at 3.

Your first three questions inquire whether "the grandfathered rights (including the right to lease directly to up to seven licensed bingo conductor organizations) transfer" in three instances: (1) to an unaffiliated third-party licensee; (2) in the instance of an individual licensee, to a legal entity wholly owned by the individual; (3) in the instance of a licensee that is a legal entity wholly-owned by an individual, to a different legal entity wholly-owned by the same individual. *See id.* Because a fundamental issue in each of these questions is the transferability of the grandfathered license's rights, we address them together.

The primary goal in construing statutes "is to ascertain and give effect to the Legislature's intent" as expressed by the statute's language. *See Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325–26 (Tex. 2017) (quotation marks omitted). "Where text is clear, [it] is determinative" of that intent. *Colorado Cty. v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017) (quotation marks omitted). The Texas Supreme Court recognizes that "the words the Legislature chooses should be the surest guide to legislative intent." *Ojo v. Farmers Group, Inc.*, 356 S.W.3d 421, 436 (Tex. 2011) (quotation marks omitted).

Occupations Code section 2001.152, titled "Eligibility," provides, in relevant part, that:

> (a) The commission may issue a commercial lessor license only to:
>
> . . .
>
> (2) a person who leases premises to a single licensed authorized organization that subleases or will sublease the premises to one or more other licensed authorized organizations for the conduct of bingo; or
>
> (3) a person who leases premises for the total control and exclusive use of only one licensed authorized organization as that organization's primary business office.

---

[2]*See* TEX. OCC. CODE § 2001.051 ("The commission shall execute its authority through a bingo division established by the commission to administer [chapter 2001].").

>(b) Notwithstanding Subsection (a), a person who was a licensed commercial lessor on June 10, 1989, whose license has been in effect continuously since that date, and who is otherwise eligible for the license may renew the license.

TEX. OCC. CODE § 2001.152.[3]  By its plain terms, subsection 2001.152(b) permits a licensed commercial lessor to renew the license if certain requisites are met.  The "[n]otwithstanding [s]ubsection (a)" language exempts the licensed commercial lessor from the requirements of subsection 2001.152(a), including subsections (a)(2) and (a)(3). *See id.*  No language in section 2001.152 applies to the transfer of a license.  To the extent this provision is a grandfathering provision, it affects only a commercial lessor license holder's ability to renew the license.

Section 2001.160 authorizes the transfer of a commercial lessor license. *See id.* § 2001.160.  It provides that "[o]n approval by the commission, a licensed commercial lessor may transfer a commercial lessor license if the person to whom the license will be transferred otherwise meets the requirements of this subchapter." *Id.* § 2001.160(a).  Unlike subsection 2001.152(b), which expressly exempts the commercial lessor license holder as of a specific date from the single lease requirement, subsection 2001.160(a) requires the transferee to meet all requirements of subchapter D. *Id.*  One such requirement is the limit on a commercial lessor license holder to directly lease to only one licensed authorized organization. *See id.* § 2001.152(a)(2), (3).  Thus, a person to whom a commercial lessor license is transferred may lease to only one licensed authorized organization, even if the license transferred was renewed under subsection 2001.152(b).  Accordingly, the Act's current language allowing the transfer of a commercial lessor license does not include the right to lease to more than one licensed authorized organization.

The Legislature's 2011 changes to subsection 2001.160 bolster this conclusion.  Prior to 2011, subsection 2001.160 required the transferee to "meet[] the requirements of *this section*."  Act of May 10, 1999, 76th Leg., R.S., ch. 388, § 1, 1999 Tex. Gen. Laws 1431, 2333 (emphasis added).  In 2011, the Legislature amended subsection 2001.160(a) to require the transferee to "meet[] the requirements of *this subchapter*."  Act of May 25, 2011, 82d Leg., R.S., ch. 1023, § 2, 2011 Tex. Gen. Laws 2601, 2601 (emphasis added).  With this change, the Legislature evidenced its intent to subject the license transferee to all requirements governing a commercial lessor license, including the lease limitations in subsection 2001.152(a).  For these reasons, a court would likely conclude, irrespective of the type of entity receiving the transfer, that a transfer of a commercial lessor license does not transfer the grandfathered right to lease to more than one licensed authorized organization.

In your fourth question, you ask about the effect on past license transfers approved by the Commission if the grandfathered rights under a commercial lessor license cannot be transferred with the license. *See* Request Letter at 3.  You provide no information about the Commission's procedure for approving a license transfer.  Thus, as this office did in Attorney General Opinion GA-0505, we assume that the approval of a transfer that purports to include grandfathered rights

---

[3]An "authorized commercial lessor" is "a person eligible for a commercial license to lease bingo premises under Subchapter D." TEX. OCC. CODE § 2001.002(1). A "licensed authorized organization" means "an authorized organization that holds a license to conduct bingo." *Id.* § 2001.002(14). A "licensed commercial lessor" is "a person licensed to lease premises and act as a commercial lessor." *Id.* § 2001.002(15). A "person" includes "an individual, partnership, corporation, or other group." *Id.* § 2001.002(20).

"is embodied in a Commission order." Tex. Att'y Gen. Op. No. GA-0505 (2007) at 5–6. Likewise, absent more information, we consider only the broad principles relevant to this question.

Chapter 2001 of the Occupations Code provides only limited authority to the Commission to reexamine a license after issuance. *See id.* at 6. Because the Commission is expressly authorized to suspend, amend, or revoke a license, and because no provision in chapter 2001 gives the Commission general authority to reopen a final order granting a license transfer, the Commission does not have such authority. *Id.* (citing *Denton Cty. Elec. Coop. v. Pub. Util. Comm'n of Tex.*, 818 S.W.2d 490, 492 (Tex. App.—Texarkana 1991, writ denied) (holding that when a statute authorizes an agency to amend or revoke a certificate and prescribes the method for doing so, other powers to reexamine prior orders may not be implied)). Moreover, "an agency's reinterpretation of a statute . . . is not the kind of changed circumstances that warrants reopening an administratively final order." *Id.*; *see Young Trucking, Inc. v. R.R. Comm'n of Tex.*, 781 S.W.2d 719, 721 (Tex. App.—Austin 1989, no writ) ("An agency can reconsider a final order only if provided for by statute or on a showing of changed circumstances."). Further, a collateral attack may void an agency order only if the agency exceeded its authority or the order was procured by extrinsic fraud. *See Chocolate Bayou Water Co. & Sand Supply v. Tex. Nat. Res. Conservation Comm'n*, 124 S.W.3d 844, 853 (Tex. App.—Austin 2003, pet. denied); *Lesikar v. Rappeport*, 33 S.W.3d 282, 316 (Tex. App.—Texarkana 2000, pet. denied). Absent changed circumstances or a finding of extrinsic fraud or that the Commission abused its authority, a court would likely not disturb previous Commission orders.

As your fifth question, you ask whether the Commission may "change the . . . historical practice to conform to the pertinent [Act] provisions without conducting an administrative rulemaking proceeding and adopting a rule describing the changed practice."[4] Request Letter at 3. Under the Administrative Procedure Act, a rule is a "state agency statement of general applicability that: (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency." TEX. GOV'T CODE § 2001.003(6)(A). A rule does not include a "statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." *Id.* § 2001.003(6)(C); *see El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008) ("A presumption favors adopting rules of general applicability through the formal rule-making procedures the APA sets out."). A rule promulgated outside of the proper rule-making procedure is voidable. *See* TEX. GOV'T CODE § 2001.035(a).

Within the definition of a rule, "general applicability" means "statements that affect the interest of the public at large such that they cannot be given the effect of law without public input." *El Paso Hosp. Dist.*, 247 S.W.3d at 714 (quoting *R.R. Comm'n of Tex. v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)). Texas courts acknowledge the "elusive" distinction between a rule and an agency statement that concerns only internal management. *See Tex. State Bd. of Pharmacy v. Witcher*, 447 S.W.3d 520, 529 (Tex. App.—Austin 2014, pet. denied); *Slay v. Tex. Comm'n on Envtl. Quality*, 351 S.W.3d 532, 546 (Tex. App.—Austin 2011, pet denied). Nonetheless, the opinions offer some guiding principles. Agency statements that "have no legal effect on private persons" are not considered rules. *Brinkley v. Tex. Lottery Comm'n*, 986 S.W.2d 764, 770 (Tex.

---

[4]"The commission may adopt rules to enforce and administer [chapter 2001]." *Id.* § 2001.054.

App.—Austin 1999, no pet.); *cf. R.R. Comm'n of Tex.*, 104 S.W.3d at 79 (holding, in the adjudication context, that "statements made in determining individual's rights, even if the number of individuals is large and they can be described as falling within a defined class" are not statements of general applicability). Conversely stated, "agency pronouncements that advise third parties regarding applicable legal requirements . . . may be 'interpretations' of law that constitute 'rules' under the [Administrative Procedure Act]." *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 703 (Tex. App.—Austin 2011, no pet.). Further, "[a]n agency statement interpreting law must bind the agency or otherwise represent its authoritative position in matters that impact personal rights." *Id.* Yet, a "mere restatement of a formally promulgated rule" is not a rule. *Id.* at 703–04.

The Commission's change in practice to no longer include grandfathered rights with a commercial lessor license transfer is, considering the above principles, more akin to a rule than not. It is an interpretation of law in that it construes the interplay between Occupations Code sections 2001.152 and 2001.162. Also, such a change is a statement of general applicability. It will affect private persons by impacting the ability of commercial lessor licensees to transfer their property. Moreover, the change is not a statement or pronouncement made in connection with just a single individual license transfer. Instead, the change operates to advise third parties, such as commercial lessor licensees as well as licensed authorized organizations, about legal requirements regarding future transfers of commercial lessor licenses. Based on these characteristics, and given the presumption in favor of a rule, a court could consider a change in the Commission's practice to be a "rule" for which the Administrative Procedure Act requires formal rule-making procedures.[5]

---

[5]The Commission's formal adoption of a rule would not ensure judicial deference to the Commission's interpretation. *See* Tex. Att'y Gen. Op. No. KP-0115 (2016) at 5, 7 (recognizing that Texas courts may state that deference "to an agency's construction is appropriate only when the statutory language is ambiguous," but, in their analysis, would instead "[use the] canons of statutory construction to determine for themselves the unambiguous meaning of a statute").

## S U M M A R Y

A court would likely conclude that the language of the Bingo Enabling Act does not authorize the transfer of a commercial lessor license that includes a grandfathered right to lease to more than one licensed authorized organization.

Absent changed circumstances or a finding of extrinsic fraud or that the Lottery Commission abused its authority, a court would likely not disturb previous Lottery Commission orders transferring a commercial lessor license that included the right to lease to more than one licensed authorized organization.

A court would likely consider a change in the Lottery Commission's historical practice to be a "rule" within the Administrative Procedure Act requiring formal rule-making procedures.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee