# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00696-CV

---

**John Gannon, Inc., Appellant**

**v.**

**The Texas Department of Transportation; James M. Bass, in His Official Capacity as Executive Director of The Texas Department of Transportation; and Kyle Madsen, in His Official Capacity as Director of Right of Way for The Texas Department of Transportation, Appellees**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-001981, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

John Gannon, Inc. (JGI) appeals from the trial court's order granting the motion to dismiss for want of jurisdiction filed by the Department of Transportation (the Department) and James Bass and Gus Cannon in their official capacities (the Officials).[1] In the underlying suit, JGI sued the Department under the Administrative Procedure Act (the APA Claim) and the Officials under the Uniform Declaratory Judgments Act (the UDJA Claim). For the following reasons, we conclude that the trial court has jurisdiction over the APA Claim but not the UDJA Claim. We therefore affirm the order in part and reverse and remand in part.

---

[1] Kyle Madsen succeeded Cannon and we therefore substitute Madsen as a party to the lawsuit. *See* Tex. R. App. P. 7.2(a). For convenience, when referring to filings or arguments made in court, we will refer to the Department and the Officials collectively as the Department.

## BACKGROUND

JGI owns and operates outdoor advertising signs—billboards—that are often located next to Texas highways. The Department is a state agency tasked with regulating commercial signs along the State's highways. *See* Tex. Transp. Code §§ 391.002, .065, .068(b). Before proceeding to the procedural history and the merits of this jurisdictional dispute, a general understanding of the legal history and framework is necessary.

**Legal History and Framework**

The Texas Transportation Code provides that the State, pursuant to its eminent domain authority, may condemn and acquire real property. *See id.* §§ 203.051–.052. As explained by the Department, historically billboards were generally not acquired through condemnation although billboard owners were often joined in the proceedings as owning leasehold interests in the land. Rather, billboard owners could receive relocation assistance benefits to remove and move the billboard. For example, before 2004, if the State condemned the property on which a billboard was located, the billboard owner may have been eligible to receive relocation benefits and a relocation permit pursuant to the Department's former rule 21.160 if the sign was "designated by the owner as personal property." *See* 43 Tex. Admin. Code § 21.160(c)(10) (2003) (Relocation) ("A permit may be issued pursuant to this section if a sign is designated by the owner as personal property and the sign owner receives relocation benefits, or if the sign is designated by the owner as realty, valued and purchased according to the department's sign valuation schedules, and retained by the sign owner. . . . Relocation benefits will be paid in accordance with Subchapter G of this chapter."), *repealed by* 35 Tex. Reg. 10634, 10634 (2010), *adopted by* 36 Tex. Reg. 2418, 2418 (2011); *see also*

2

43 Tex. Admin. Code § 21.116 (Moving and Related Expense Payments) (promulgated to take effect in 2002 and providing that when person is required to relocate as result of acquisition of right-of-way for highway project, Department will pay reasonable expenses of relocating displacee and displacee's business and personal property so long as eligibility requirements are met).[2]

In 2004, the Department amended section 21.160 to clarify that billboards are personal property, not real property. *See* 29 Tex. Reg. 8779, 8779–80 (2004), *adopted by* 29 Tex. Reg. 11389, 11389 (2004) (to be codified as amendment to 43 Tex. Admin. Code § 21.160) (explaining that "[t]here has been confusion due to the language included in § 21.160(c)(10) that the department may consider sign structures as real property" and that "[t]his section is contrary to current department policy, and § 21.160 is amended to delete any reference to the treatment of signs as real property for relocation assistance purposes"); *Harris County v. Clear Channel Outdoor, Inc.*, No. 14-07-00226-CV, 2008 WL 1892744, at *1 (Tex. App.—Houston [14th Dist.] Apr. 29, 2008, no pet.) (mem. op.) (noting that "[p]rior to December 2004, both [Department] policy and federal law considered billboards removed for transportation projects to be real property and required that the billboard owner be compensated for the loss of the sign or the cost of relocating the sign," but that Department changed regulations to "dictate[] that billboards affected by transportation projects would no longer be treated as real property and the sign owners would no longer be offered compensation for the loss of the sign"). In 2011, the Department repealed section 21.160 and other related regulations and replaced them with a new subchapter that subdivided former section 21.160 across multiple

---

[2] Rules cited from title 43 of the Texas Administrative Code were promulgated by the Department. Unless otherwise stated, cited rules refer to the current version.

sections. *See* 36 Tex. Reg. 2418, 2418 (2011) (noting that "[a] majority of the new rules have nonsubstantive changes" and "[t]he department adopts a new rule organizational structure that subdivides the current rules into smaller sections and reorganizes them so that the new rules logically follow the sign permitting process"). Thus, the relevant rules at issue in this appeal providing for relocation, relocation benefits, relocation permits, and locational and spacing requirements were spread across multiple new sections. *See id.* at 2452–53 (noting that these requirements would be codified at sections 21.192 (Permit for Relocation of Sign), 21.193 (Location of Relocated Sign), 21.195 (Relocation of Sign within Municipality), and 21.196 (Relocation Benefits) of title 43 of Texas Administrative Code).

In 2015, a dispute between the State and a billboard owner arising out of a condemnation proceeding reached the Texas Supreme Court. *See State v. Clear Channel Outdoor, Inc.*, 463 S.W.3d 488 (Tex. 2015). The State argued that the condemnation of land did not take the billboards on that land because billboards are personalty, not fixtures. *See id.* at 493. The Texas Supreme Court, however, rejected the State's argument, holding:

> Clear Channel's billboards were fixtures if a unified fee-holder would have intended them to become a permanent part of the land. . . . The billboards were firmly embedded in the earth; their removal required that the poles be cut and the signs dismantled. Moreover, the billboards were perfectly suited to the use of the realty, which was outdoor advertising alongside a busy freeway. On this record, the hypothetical holder of a unified fee would have intended the billboard structures to become a part of the real estate as a matter of law.

*Id.* at 495–96. But, as noted, the Texas Supreme Court limited its holding to "this record" and further stated:

> This is not to say that all sign structures are necessarily fixtures. Different construction methods may make a billboard structure more portable than those in this case. Were a sign less firmly embedded in the ground, more easily moveable,

4

or located on land not actually useful for advertising, it might well remain personalty. Courts are to determine whether any particular billboard is a fixture in a condemnation case based on the *Logan* test as framed from the perspective of a holder of the unified fee.

*Id.* at 496 (citing *Logan v. Mullis*, 686 S.W.2d 605, 607–08 (Tex. 1985)).

On March 29, 2016, Cannon issued a memorandum titled "Guidance for Impacted Off-Premise Billboards as Part of Highway Transportation Projects." On June 9, Cannon issued a document titled "Amended Guidance for Impacted Off-Premise Billboards Affected by Highway Transportation Projects" (the Amended Guidance) that expressly "clarifie[d] and replace[d]" the March guidance document. The Amended Guidance stated, as relevant here:

- In light of recent Texas Supreme Court case-law, the Right of Way Division has revised how it treats billboards in the course of acquiring property as part of a highway construction project.

- Effective immediately for new acquisitions where no initial offer has been previously made, all off-premise billboards will be treated as realty.

- For the sign structure owner to be eligible for a relocation permit . . . they will need to retain the structure for its salvage value and follow the current . . . relocation permitting regulations.

- In conclusion, [the Department]'s policy is that all billboards are treated as realty. In addition, this will ensure the timely removal of the signage from the real property that is the subject to the highway construction project.

The Amended Guidance continued by stating, "Effective the date of this guidance the following procedures," listed below as relevant to this appeal, "will be followed":

- [T]he billboard structure owner will not be provided reimbursement of expenses to relocate the billboard structure as a billboard structure cannot be the subject of duplicate payments as both an item of real estate and for relocation[.]

- If the billboard structure owner chooses to retain the structure and this is properly reflected in the deed, [the Department] will provide the sign owner[] a Notice to Vacate

5

at a date certain that corresponds with the language in the deed, which should be no less than 60 days prior to the date on which the land on which the sign is erected is needed for construction purposes.

- If the billboard structure owner does not remove the structure per the deed and Notice to Vacate, the ownership shall revert back to the state for removal. The sign structure owner will forfeit the salvage value paid to the state AND their eligibility for a relocation permit . . . .

- If the billboard structure owner does not choose to retain the structure, then they will not be provided the ability to apply for a relocation permit under the current . . . permitting regulations and any application by the sign owner would be treated as an application for a new permit.

The Amended Guidance closed by stating, "All Right of Way Manuals will be updated as needed."

In September 2017, the Department proposed the repeal and amendment of certain regulations that concerned outdoor signs because "[t]he Texas statutes regulating outdoor advertising were ruled unconstitutional" as the "definition of 'sign' was overinclusive." 42 Tex. Reg. 4770, 4770 (2017), *adopted by* 43 Tex. Reg. 1446, 1446 (2018) (citing *AusPro Enters., LP v. Texas Dep't of Transp.*, 506 S.W.3d 688 (Tex. App.—Austin 2016, pet. granted, judgm't vacated w.r.m.)). As relevant here, the Department amended section 21.192 to "require that a sign must be timely removed from the construction site to be eligible for the relocation provisions" and repealed section 21.196 "as relocation benefits are an aspect of the purchase of the right of way and not the sign permit process." 43 Tex. Reg. 1446, 1450 (2018).

**Procedural History**

On April 24, 2018, JGI sued the Department and the Officials, seeking declaratory relief under the APA, *see* Tex. Gov't Code § 2001.038, and the UDJA, *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. In its APA Claim, JGI challenged the validity of the

6

Amended Guidance and "any Department policy related to its enforcement or enactment" on two grounds. First, JGI challenged the Amended Guidance as an invalid rule that eliminates rights under "State and Federal authorities" that allegedly guarantee billboard owners "reimbursement of reasonable moving expenses when signs are relocated to accommodate a highway project." *See* Tex. Gov't Code § 2001.038 (providing for challenge to validity of rule). Second, JGI claims that the Amended Guidance is voidable because it was not adopted in substantial compliance with the APA. *See id.* § 2001.035 ("A rule is voidable unless a state agency adopts it in substantial compliance with Sections 2001.0225 through 2001.034."). In its UDJA Claim, JGI sought attorney's fees and a declaration that the Officials "have acted ultra vires by committing non-discretionary acts and exceeded their statutory authority in adopting and enacting the [Amended] Guidance [Document] and [the Department's] new policy for treatment of signs displaced by State construction projects." *See* Tex. Civ. Prac. & Rem. Code §§ 37.004 (providing for declaratory relief), .009 (providing for attorney's fees).

In response, the Department filed a plea to the jurisdiction, moved for protection from discovery, and moved to dismiss JGI's claims for want of jurisdiction. The Department made three primary arguments. First, it argued that "after the *Clear Channel* decision, the State can no longer consider billboards to be personal property and is required to acquire and compensate for billboard structures." And while the "Amended Guidance may have expressed the law contained in the *Clear Channel* decision, the . . . Amended Guidance did not constitute [a] rule[] subject to rule-making procedures," nor does it "affect any private rights" because "billboard owners do not have the right to the issuance of commercial sign permits." Thus, according to the Department, because there is no rule, JGI "cannot seek relief under [section] 2001.038 [of the Texas Government Code] and sovereign immunity bars the claim." Second, the

7

Department argued that the claims are moot because the Department "has adopted new rules that address both relocation assistance benefits and commercial sign permits." Third, the Department argued that the trial court lacks jurisdiction over the UDJA Claim because JGI "may not seek relief under the UDJA when such relief would be redundant to relief under the APA."

JGI countered that the Amended Guidance constitutes a rule under the APA's definition of "Rule." *See* Tex. Gov't Code § 2001.003(6) (defining "Rule"). JGI asserted that the Amended Guidance affects its private rights because it:

> (1) eliminate[s] a billboard owner's statutorily-guaranteed right to receive reimbursement of relocation expenses incurred as a result of a highway project, and (2) require[s] sign owners to accept the State's offer for the acquisition of a billboard in eminent domain before an arbitrary and shifting deadline, or else forfeit the right to relocate the sign using [the Department's] relaxed relocation criteria.

JGI noted, however, that the *Clear Channel* Court neither held "that *all* billboards were to be treated as realty" nor "address[ed] the statutory and regulatory scheme for reimbursement of relocation expenses or issuance of relocation permits." Thus, according to JGI, the Amended Guidance is a rule, and jurisdiction exists under section 2001.038. JGI also argued that the APA Claim is not moot because "[t]he newly revised Administrative Code, including Sections 21.164 and 21.192, provides no authority for [the Department] to hold that a sign owner's permit application is contingent on the sign owner's actions before the special commissioners' hearing" and "the Property Code and other provisions of the Administrative Code remain in place and continue to provide sign owners with the right to relocation assistance." Finally, JGI asserted that "Defendants may be sued under both the APA and the UDJA because JGI seeks separate relief against the separate parties—JGI challenges the legality of the Guidance, as well as Defendants' authority to implement and enforce the Guidance."

8

After a hearing, the trial court granted the Department's motion to dismiss for want of jurisdiction and denied its motion for protection from discovery as moot. In a letter, the trial court explained that "[a]mong other reasons," it dismissed the APA Claim because "the . . . Amended Guidance [is] not [a] rule[] as [it] did not include the amendment or repeal [of] a prior rule," *see id.* § 2001.003(6)(b) (noting that "Rule" "includes the amendment or repeal of a prior rule"), and dismissed the UDJA Claim because "[JGI] has not demonstrated a live case or controversy." JGI now appeals from this order.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's authority to decide a case. *Heckman v. Williamson County*, 369 S.W.3d 137, 149 (Tex. 2012). Here, the Department challenges jurisdiction based on sovereign immunity and mootness, questions of law we review de novo. *Id.* at 226 (mootness); *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (sovereign immunity). In assessing a plea to the jurisdiction, our analysis begins with the live pleadings, and we determine whether the facts alleged affirmatively demonstrate that jurisdiction exists. *Heckman*, 369 S.W.3d at 150. We may also consider evidence submitted to negate the existence of jurisdiction. *Id.* We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Id.* If jurisdiction is affirmatively negated, a plea to the jurisdiction must be granted. *Id.*

## DISCUSSION

JGI raises three issues on appeal: whether the Amended Guidance constitutes a rule, whether sovereign immunity applies to the APA and UDJA Claims, and whether JGI should have been afforded the right to conduct discovery. In response, the Department also raises a

9

standing issue as to whether the claims are moot. We begin our analysis with whether the Amended Guidance constitutes a rule.

### *Is the Amended Guidance a rule?*

Section 2001.038 of the APA is a "legislative grant of subject-matter jurisdiction, so that valid claims raised pursuant to that provision are not barred by sovereign immunity." *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 903 (Tex. App.—Austin 2009, no pet.). Section 2001.038 thus waives sovereign immunity for a claim for declaratory relief regarding the "validity or applicability of a rule . . . if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a); *see El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 713 (Tex. 2008); *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 700 (Tex. App.—Austin 2011, no pet.). "[A] challenged agency action that constitutes a 'rule' is among the facts (more precisely, a mixed question of law and fact) that must exist in order for a claimant to successfully invoke, via section 2001.038, a trial court's subject-matter jurisdiction over the claim for relief authorized by the statute." *Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 544 (Tex. App.—Austin 2011, pet. denied). Whether an agency action is a rule "is distinct from and precedes the issue" of whether the plaintiff is entitled to relief under section 2001.038. *Id.* at 545.

The APA provides that a rule (1) is an "agency statement of general applicability" that either "implements, interprets, or prescribes law or policy" or describes an agency's "procedure or practice requirements"; (2) "includes the amendment or repeal of a prior rule"; and (3) "does not include a statement regarding only the internal management or organization of a

10

state agency and not affecting private rights or procedures." Tex. Gov't Code § 2001.003(6)(A)–(C); *see El Paso Hosp. Dist.*, 247 S.W.3d at 714. In determining whether an agency statement is a rule, "we consider the intent of the agency, the prescriptive nature of the policy, and the context in which the agency statement was made." *Texas State Bd. of Pharmacy v. Witcher*, 447 S.W.3d 520, 533 (Tex. App.—Austin 2014, pet. denied as improvidently granted); *see Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 722 (Tex. App.—Austin 2009, no pet.) (citing *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 443 (Tex. 1994)). But an agency's insistence that its statement is not a rule is not determinative. *See El Paso Hosp. Dist.*, 247 S.W.3d at 714–15 (rejecting agency's argument that statement "is not a rule itself, but rather its interpretation of the [existing] rule"). Agency pronouncements that "advise third parties regarding applicable legal requirements . . . may be 'interpretations' of law that constitute 'rules' under the APA," but informal agency statements merely restating formally promulgated rules are not. *LMV-AL Ventures, LLC v. Texas Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 121 (Tex. App.—Austin 2017, pet. denied) (quoting *Sunset Transp.*, 357 S.W.3d at 703). JGI asserts that the Amended Guidance satisfies each element of the APA's definition and is not an informal agency statement merely restating formally promulgated rules.

The parties do not dispute that the Amended Guidance is a "state agency statement." The Department is a state agency. *See Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 641 (Tex. 2004) (describing Department as state agency). The Amended Guidance purports to speak for the Department, conveying its official position on policy matters and stating what the Department "will allow" or "will provide" and what "will not be provided." And the Department does not contend that the writer Cannon—the director for the Department's right of way division—was acting with anything less than the Department's full

11

authority. *See generally* 43 Tex. Admin. Code § 1.1 (Texas Transportation Commission); *see id.* § 1.1(b)(1)(L), (O), (b)(2) (providing that Commission will "adopt rules for the operation of the department" and "establish policy necessary to carry out the duties and functions of the department and the commission" and may delegate functions listed under paragraph (1) to executive director who may further delegate functions to employee of department). We therefore conclude that the Amended Guidance is a "state agency statement." *See Teladoc, Inc. v. Texas Med. Bd.*, 453 S.W.3d 606, 614 (Tex. App.—Austin 2014, pet. denied) (concluding letter is "state agency statement" when "it purports to speak for the Board, conveying its official position, and there is no contention that the writer, the agency's general counsel, was acting with anything less than the Board's full authority"); *Entertainment Publ'ns*, 292 S.W.3d at 718, 721–22 (holding that letter signed by "Assistant Director of Tax Administration" conveying Comptroller's construction of tax laws was "rule" under APA; noting that "the Comptroller does not contend that the signer of the letter was acting with anything less than her full authority").

"The term 'general applicability' under the APA references 'statements that affect the interest of the public at large such that they cannot be given the effect of law without public input.'" *El Paso Hosp. Dist.*, 247 S.W.3d at 714 (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)). The Amended Guidance is generally applicable because it affects the class of owners of off-premise billboards. The Amended Guidance expressly declares that it is "[e]ffective immediately for new acquisitions where no initial offer has been previously made," that "the Right of Way Division has revised how it treats billboards in the course of acquiring property as part of a highway construction project," and that "all billboards are treated as realty." *See id.* (holding that because agency statement "affect[s] all hospitals receiving reimbursement for inpatient Medicaid services," it is one "of general applicability").

The Amended Guidance also "implements, interprets, or prescribes law or policy" and describes the Department's "procedure or practice requirements." It implements and interprets law by stating that the Department has revised how it treats billboards "[i]n light of recent Texas Supreme Court case-law." And the Department's intent is clear that it is prescribing law or policy that would be binding: the Amended Guidance declares that "[e]ffective the date of this guidance the following procedures will be followed" and then lists the procedures to be followed, and it prescribes new policy by stating that the Department's "policy is that all billboards are treated as realty." *See Badger Tavern, L.P. v. Hegar*, No. 03-18-00291-CV, 2018 WL 4322383, at *4 (Tex. App.—Austin Sept. 11, 2018, pet. denied) (mem. op.) (noting "retroactivity pronouncement" meets definition of rule because it is generally applicable and "is a statement by the Comptroller that informs the public of the Comptroller's intention to apply the new record-keeping requirement to 'all pending cases'"); *Witcher*, 447 S.W.3d at 529 ("[A] distinction exists between nonbinding evaluative guidelines that take into consideration case-specific circumstances—which have been held not to be a rule—and policies that dictate specified results without regard to individual circumstances, which have been held to be a rule."); *Entertainment Publ'ns*, 292 S.W.3d at 718, 722 (noting that legal interpretation in Comptroller's letter constituted rule because it would bind agency employees and "unambiguously express[ed] an intent to apply this interpretation . . . in all future cases involving brochure-fundraising firms, regardless of whether the particular circumstances of each transaction might have resulted in different tax treatment").

In a letter, the trial court explained that the Amended Guidance is not a rule because it does not include the amendment or repeal of a prior rule. But although a "Rule" according to the APA "includes the amendment or repeal of a prior rule," Tex. Gov't Code

13

§ 2001.003(6)(B), "an agency statement is not required to amend or repeal a prior rule in order to meet the APA's definition of 'rule,'" *EATX Coffee, LLC v. Texas Alcoholic Beverage Comm'n*, No. 04-16-00213-CV, 2016 WL 7119038, at *3 (Tex. App.—San Antonio Dec. 7, 2016, pet. dism'd) (mem. op.). In other words, although the fact that an agency statement amends or repeals prior rules may be a sufficient condition for the statement to constitute a rule, it is not a necessary condition. *See Teladoc*, 453 S.W.3d at 616 (noting that "'includes' denotes that a 'rule' may include agency statements beyond those that amend or repeal an existing rule").

Nevertheless, the Amended Guidance does effectively amend or repeal prior rules. When the Amended Guidance was implemented, section 21.196(a) stated that "[r]elocation benefits will be paid in accordance with Subchapter G of this chapter (relating to Relocation Assistance and Benefits) for the relocation of a sign under § 21.192 of this division (relating to Permit for Relocation of Sign)." 43 Tex. Admin. Code § 21.196(a) (2016) (Relocation Benefits). But the Amended Guidance provides that "the billboard structure owner will not be provided reimbursement of expenses to relocate the billboard structure as a billboard structure cannot be the subject of duplicate payments as both an item of real estate and for relocation" and "that all billboards are treated as realty." The Department argues that this is merely a restatement of the law following *Clear Channel*. But *Clear Channel* expressly limited its holding by noting that a billboard may, or may not, be realty depending on the circumstances of each case. 463 S.W.3d at 496 ("This is not to say that all sign structures are necessarily fixtures. . . . Courts are to determine whether any particular billboard is a fixture in a condemnation case based on the *Logan* test as framed from the perspective of a holder of the unified fee."). The Amended Guidance makes the determination that *all* billboards constitute

14

fixtures notwithstanding *Clear Channel*'s limitation and thus cannot be construed as a mere restatement of the law enunciated in *Clear Channel*.

Additionally, in 2016, section 21.192 provided that "[a] sign may be relocated in accordance with this section . . . if the sign is legally erected and maintained and will be within the highway right of way as a result of a highway construction project." 43 Tex. Admin. Code § 21.192(a) (2016) (Permit for Relocation of Sign). But the Amended Guidance effectively amended section 21.192(a) by imposing additional timing requirements for removal of the structure from the land—i.e., by the date listed on the Notice to Vacate but no later than 60 days prior to when the land is needed for construction purposes—which, if not complied with, will result in the owner "forfeit[ing] . . . their eligibility for a relocation permit."**[3]**

Thus, the Amended Guidance has a "legal effect or significance independent of what is already contained" in *Clear Channel* and sections 21.196(a) and 21.192, and therefore constitutes an amendment or repeal of prior rules. *See Teladoc*, 453 S.W.3d at 615. For these same reasons, the Amended Guidance is not a statement regarding only the agency's internal management or organization but rather is a statement that affects the billboard owners' private rights. *See Sunset Transp.*, 357 S.W.3d at 703 (noting that agency statement must "bind the agency or otherwise represent its authoritative position in matters that impact personal rights"); *Slay*, 351 S.W.3d at 546 ("Although the distinction between a 'rule' and an agency statement that concerns only 'internal management or organization . . . and not affecting private rights' may

---

**[3]** The Department argues that the Amended Guidance did not amend or repeal prior rules because in 2018 section 21.196 was repealed and section 21.192 was amended. Although the Department's actions following the issuance of the Amended Guidance may affect whether the claims are moot, as discussed further below, these actions have no bearing on whether the Amended Guidance constituted "the amendment or repeal *of a prior rule*." Tex. Gov't Code § 2001.003(6)(B) (emphasis added).

15

sometimes be elusive, the core concept is that the agency statement must in itself have a binding effect on private parties."); *Texas Mut. Ins. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 556 (Tex. App.—Austin 2008, pet. denied) ("The 2005 Staff Report did not affect private rights because it did not change or amend Rule 134.401; it simply mandated internal consistency when applying the rule."). We therefore conclude that the Amended Guidance constitutes a rule susceptible to challenge under section 2001.038 of the Texas Government Code and that sovereign immunity is waived as to the APA Claim. *See Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 745 (Tex. App.—Austin 2014, pet. dism'd) (concluding that when plaintiff challenges validity of rule and alleges that rule interferes with or impairs its legal right or privilege, section 2001.038 waives sovereign immunity as to that claim).

### Is the APA Claim moot?

The Department argues that, even if the Amended Guidance could be considered a rule, "JGI's complaints are moot because [the Department] has adopted new rules that address both relocation assistance benefits and commercial sign permits for billboards within the highway right of way as a result of a highway construction project." *Cf. Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) (concluding that when appeal became moot, "there ceased to be a live controversy" and court no longer had jurisdiction as opinion would be advisory). Specifically, the Department argues that by amending section 21.192 and repealing section 21.196 in 2018, it "add[ed] the requirement that a commercial sign owner timely remove the billboard from the [Department] construction project in order to qualify for a relocation permit at a new highway location" and "no longer provide[d] relocation assistance benefits for moving billboards."

16

As an initial matter, the Department's arguments before this Court make clear that the Department intends to continue relying on and utilizing the Amended Guidance. Thus, it appears that the Department is arguing that with the 2018 amendment of section 21.192 and repeal of section 21.196, the Amended Guidance has become an informal agency statement merely restating formally promulgated rules—i.e., section 21.192 and the implications following the repeal of section 21.196—which would change its status so that it is no longer a rule as defined by the APA. *See LMV-AL Ventures*, 520 S.W.3d at 121 (noting that informal agency statements merely restating formally promulgated rules are not rules as defined by the APA). We disagree.

Although the Department may have repealed section 21.196, which provided relocation assistance benefits for moving billboards, JGI argues in its APA Claim that it is entitled to relocation benefits under federal and state statutes and state regulations and policies. In its petition, JGI contests the Amended Guidance's pronouncement that "the billboard structure owner will not be provided reimbursement of expenses to relocate," alleging that:

> The [Amended] Guidance violates JGI's substantive rights afforded under the Uniform [Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4622], the Texas Property Code [Tex. Prop. Code § 21.046], the Texas Administrative Code [43 Tex. Admin. Code § 21.116], and [the Department]'s Relocation Assistance Manual. As described above, under these State and Federal authorities, billboard owners are guaranteed reimbursement of reasonable moving expenses when signs are relocated to accommodate a highway party. [The Department's Amended] Guidance purports to eliminate these rights and simultaneously replace them with an illegal, Department-enacted policy.

The Department argues in briefing before this Court that JGI's cited "State and Federal Authorities" apply only to personal property and that JGI "seeks an unsupported interpretation of the law such that, in addition to recovering compensation . . . it would also be entitled to recover

17

relocation assistance benefits to move billboards that have been acquired by the State, and to obtain sign relocation permits for billboards that have been acquired by the State."[4] But the Department's position concerns questions to be determined on the merits, not at the plea to the jurisdiction stage. *See Sunset Transp.*, 357 S.W.3d at 702 (noting that determining whether appellees have invoked subject matter jurisdiction in rule challenge under section 2001.038 "does not require us to delve into the merits of the claims—nor would such an inquiry be proper" (citation omitted)).

Regarding section 21.192, a comparison of that regulatory provision with the Amended Guidance reveals that the Amended Guidance imposes additional requirements. As JGI argues, "The [Department]'s [Amended] Guidance amends this simple requirement [of timely removal] by imposing additional, arbitrary restraints on sign owners." Section 21.192, as relevant here and as amended in 2018 with added text italicized, provides:

> A *commercial* sign *that has been timely removed from a department construction project site* may be relocated in accordance with this section [and other specified regulations] if the sign is legally erected and maintained and will be within the highway right of way as a result of a highway construction project[.]

43 Tex. Admin. Code § 21.192(a) (emphases added); *see* 42 Tex. Reg. 4770, 4788 (2017) (proposing amended text); 43 Tex. Reg. 1446, 1450 (2018) (adopting amendment language). As relevant here, the Amended Guidance, in contrast, states:

---

[4] In its motion to dismiss before the trial court, the Department argued: "JGI's complaint is also moot because JGI cannot demonstrate that any alleged rule is invalid or inapplicable. As discussed [in the motion], [the Department]'s position that relocation assistance benefits are only available for the moving of personal property, and position that obtaining a commercial sign permit for a sign within the highway right of way as a result of a highway construction project is subject to the owner timely removing the sign from the State's project, are not in violation of any statute."

18

If the billboard structure is not retained by the structure owner during acquisition of the property, the billboard structure owner and the owner of the structure permit (one in the same or not), would not be eligible for a relocation permit, under 43 T.A.C. §21.192[.] . . . [The Department] will allow the billboard structure owner to retain the structure for its salvage value and follow the current Outdoor Advertising relocation permitting regulations . . . . If the billboard structure owner chooses to retain the structure and this is properly reflected in the deed, [the Department] will provide the sign owner[] a Notice to Vacate at a date certain that corresponds with the language in the deed, which should be no less than 60 days prior to the date on which the land on which the sign is erected is needed for construction purposes. If the billboard structure owner does not remove the structure per the deed and Notice to Vacate, the ownership shall revert back to the state for removal. The sign structure owner will forfeit the salvage value paid to the state AND their eligibility for a relocation permit under the Outdoor Advertising permitting regulations.

Thus, JGI argues that the Amended Guidance goes beyond the timely removal requirement by "requir[ing] sign owners to retain a structure 'during acquisition of the property' or lose eligibility for a relocation permit" and imposing the 60-day requirement.

The Amended Guidance's text does not "track" section 21.192's language, but rather "depart[s] from and effectively change[s] that text"—in other words, the Amended Guidance imposes new requirements. *See Teladoc*, 453 S.W.3d at 620 (concluding that agency's "pronouncements . . . are tantamount to amendments to the existing text" of rule at issue because they "hardly 'track'" rule's language, "rather, they depart from and effectively change that text" and that "even if we assume TMB's pronouncement could somehow be reconciled with [the rule's] text, as the agency insists, the letter would still have the effect of amending the rule so as to adopt one of the alternative reasonable constructions to which the current text would be susceptible while rejecting another"); *see also LMV-AL Ventures*, 520 S.W.3d at 122 (distinguishing *Teladoc* because "[i]n this case, by contrast, DADS's interpretation does not amend Rule 92.62, create a new rule, or impose new requirements").

19

The Department argues that any difference between the Amended Guidance and section 21.192 is a proper exercise of its discretion: "As for the particulars of effecting timely removal of a billboard pursuant to revised § 21.192, [the Department] certainly has discretion to determine how that provision is met." While this may be true, the Department may not exercise its discretion by informally making (1) a "statement of general applicability" (2) that "does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures" and (3) that "implements, interprets, or prescribes law or policy" or "describes the procedure or practice requirements of a state agency," unless it substantially complies with the APA's rulemaking requirements. Tex. Gov't Code § 2001.003(6); *see id.* § 2001.035 (providing that rule is voidable unless adopted in substantial compliance with APA).

In sum, section 2001.038 of the Texas Government Code permits a rule challenge "if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." *Id.* § 2001.038(a). JGI has alleged that the Amended Guidance—which we have already determined is a rule—"interferes with or impairs, or threatens to interfere with or impair" its legal rights or privileges under the cited "State and Federal Authorities," regardless of the Department's amendments of section 21.192 and repeal of section 21.196.[5] A live controversy exists between JGI and the Department as to these issues that concern "[t]he validity and applicability" of the Amended Guidance as a rule, and thus the APA Claim is not moot. *See id.* Accordingly, we reverse the trial court's order dismissing the APA Claim.

---

[5] JGI also pleaded, "The newly revised Administrative Code, including §§ 21.164 and 21.192, provides no authority for [the Department] to hold that a sign owner's permit application is contingent on the sign owner's actions before the Special Commissioners' hearing."

### Does the trial court have jurisdiction over the UDJA Claim?

Having concluded that the Amended Guidance constitutes a rule for the purpose of the APA Claim and that there exists a live controversy as to the validity of the rule, we turn to JGI's UDJA Claim. For its UDJA Claim, JGI pleaded:

> JGI seeks a declaration that Defendants, Gus Cannon and James Bass, have acted ultra vires by committing non-discretionary acts and exceeded their statutory authority in adopting and enacting the [Amended] Guidance and [the Department]'s new policy for the treatment of signs displaced by State construction projects, and therefore the [Amended] Guidance, and any Department policy related to its enforcement or enactment, are invalid.

The Department responded that the UDJA Claim is barred by the redundant remedies doctrine.

"Under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels." *Patel v. Texas Dep't of Licensing & Reg.*, 469 S.W.3d 69, 79 (Tex. 2015). Here, the UDJA Claim seeks the same relief as the relief pleaded for in the APA Claim—invalidation of the Amended Guidance and any Department policy related to its enforcement or enactment. *See Texas Dep't of Pub. Safety v. Salazar*, No. 03-11-00478-CV, 2013 WL 5878905, at *9 (Tex. App.—Austin Oct. 31, 2013, pet. denied) (mem. op.) (concluding that redundant remedies doctrine bars UDJA claim when relief sought "is essentially the same as the relief that they sought through their [APA] claims" and that "a party may not seek relief under the [UDJA] when that relief is redundant to relief available under the [APA]"); *Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.—Austin 2000, pet. dism'd by agr.) ("When a plaintiff files a proceeding that only challenges the validity of an administrative rule, the parties are bound by the APA and may not seek relief under the UDJA because such relief would be redundant."); *cf. SWEPI LP v. Railroad*

*Comm'n*, 314 S.W.3d 253, 269–70 (Tex. App.—Austin 2010, pet. denied) ("A declaratory judgment claim 'will not lie' when it is 'redundant' of a parallel administrative appeal and the 'remedy under the APA is the same as that provided under the [UDJA]'—reversal of the agency's final order." (quoting *Texas Mun. Power Agency v. Public Util. Comm'n*, 260 S.W.3d 647, 651 (Tex. App.—Austin 2008, no pet.))).

Because we have concluded that the Amended Guidance is a rule under the APA, we also conclude that JGI's UDJA Claim that is predicated upon the ultra vires exception is barred by the redundant remedies doctrine. *See Sunset Transp.*, 357 S.W.3d at 705 (noting that "[a]ssuming that appellees replead under section 2001.038, we agree with appellants that appellees' UDJA claims [which are predicated upon the ultra vires exception] would be redundant remedies" and "would be subject to dismissal"); *Salazar*, 304 S.W.3d at 906 n.7 ("To the extent the Appellees also seek relief under the UDJA in connection with these rule challenges, we dismiss those claims for want of jurisdiction on the ground that a party may not seek relief under the UDJA when such relief would be redundant to relief under the APA."). If JGI were to prevail on an ultra vires claim, the only relief generally available would be prospective injunctive relief, which JGI has requested in its petition. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373–76 (Tex. 2009) (noting that "retrospective monetary claims [for ultra vires claims] are generally barred by immunity" and that generally "a claimant who successfully proves an ultra vires claim is entitled to prospective injunctive relief"); *McLane Co. v. Texas Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 877 (Tex. App.—Austin 2017, pet. denied) (noting that if plaintiff were to prevail on ultra vires claim, its only relief would be prospective). But this remedy is essentially redundant to the remedies available under the APA. We have held that courts possess jurisdiction to award injunctive relief "in connection with a

22

declaratory judgment invalidating a rule under APA section 2001.038." *Balquinta*, 429 S.W.3d at 750. And we have concluded that there is no harmful error—and indicated that there is no error at all—in the "assertion of jurisdiction over the claims for injunctive relief to the extent they are also addressed, as a formal matter, to the [state agency official] in his official capacity." *Id.* We rested this conclusion on the following reasoning:

> [T]he distinction [between suing "the State" or an agency versus suing a human agent of "the State" to reassert "the State's" control] has far less significance where, as here, sovereign immunity has been waived so as to permit a claim directly against a state agency (one agent of "the State") and the claimant formally pleads that claim, alternatively or additionally, against a human agent of "the State." *In those circumstances, the distinction amounts merely to two different ways to plead for the same remedy against the same defendant.*

*Id.* (emphasis added); *see id.* at 750 n.115 (suggesting that "the injunctive-relief claims against DSHS and the Commissioner, in his official capacity, are considered to be the same claim for relief against the same party" and explaining that "[a]lternatively, this ultra-vires theory would become relevant—and would not provide merely a redundant remedy—if, as appellants urge, injunctive relief cannot be obtained against DSHS by virtue of APA section 2001.038"); *cf. Heinrich*, 284 S.W.3d at 372 (noting that "*ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state" and "these suits do not seek to alter government policy but rather to enforce existing policy"). Having concluded that the UDJA Claim is barred by the redundant remedies doctrine, we affirm the trial court's order as to the dismissal of the UDJA Claim.

### Should JGI have been afforded the opportunity to conduct discovery?

We need not decide whether JGI should have been afforded the opportunity to conduct discovery, as the trial court has not made a decision on the merits as to that issue. The

23

trial court merely denied as moot the Department's motion for protection from discovery. Because we have concluded that the cause should not be dismissed for lack of jurisdiction, we reverse the order denying as moot the motion for protection from discovery.

## CONCLUSION

For these reasons, we reverse the trial court's order as to the dismissal of the APA Claim, affirm the order as to the dismissal of the UDJA Claim, and reverse the order as to the denial of the motion for protection from discovery. We remand the cause for further proceedings consistent with this opinion.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed in Part; Reversed and Remanded in Part

Filed:   October 9, 2020