**Affirmed and Majority and Concurring and Dissenting Opinions filed August 21, 2025.**



In The

# Fifteenth Court of Appeals

---

### NO. 15-25-00004-CV

---

## CURADEV PHARMA PVT. LTD. AND CURADEV PHARMA LIMITED, Appellants

### V.

## THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, DR. XIAOCHEN BAI, AND DR. XUEWU ZHANG, Appellees

---

**On Appeal from the 101st District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-24-03875**

---

### MAJORITY OPINION

In this appeal, Appellants Curadev Pharma Pvt. Ltd and Curadev Pharma Limited (collectively, Curadev) challenge the trial court's order granting the plea to the jurisdiction filed by Appellees the University of Texas Southwestern Medical Center (Southwestern), Dr. Xiaochen Bai, and Dr. Xuewu Zhang (collectively, Appellees). The underlying dispute arose after Appellees published research on

potential treatment for cancer and other diseases. Curadev alleged that Appellees based their research on knowledge of Curadev's proprietary information relating to a test compound provided to Southwestern by a third party. On appeal Curadev argues the trial court erred in (1) granting Appellees' plea to the jurisdiction based on sovereign immunity; and (2) referring the plea to an Associate Judge.

Reviewing the jurisdictional allegations, taking them as true, and construing them in favor of Curadev, we conclude that Curadev's amended petition does not present a claim for which sovereign immunity is waived and affirm the trial court's order granting the pleas to the jurisdiction.

## BACKGROUND[1]

Curadev is a biotech company researching drug therapy directed toward ameliorating disease. One of Curadev's drug programs involves the discovery of "small molecule agonists of human Stimulator of Interferon Genes (STING)" for the treatment of cancer. STING is "a critical protein in the generation of innate immune responses." STING agonists are compounds that interact with and activate the STING protein. Curadev designed and developed several STING agonists. These agonists were allosteric human STING agonists that likely bound to a unique site in what is known as the "transmembrane region" of the STING protein. In 2019, Curadev licensed certain STING agonists to Millennium Pharmaceuticals, Inc., a wholly owned subsidiary of Takeda Pharmaceutical Co. Ltd. Neither Millennium Pharmaceuticals nor Takeda Pharmaceutical are parties to this litigation.

Defendants Bai and Zhang, employees of Southwestern, were also researching STING agonists and published a structure of STING, which included the transmembrane portion of the STING protein. In March 2019, Bai and Zhang

---

[1] We review the facts as stated in Curadev's live pleading.

"published a structure of full-length STING using cryo-electron microscopy (one of the methods that can be used to confirm whether a particular STING agonist is allosteric), which included the transmembrane portion of the STING protein." Following Bai and Zhang's publication, a Takeda subsidiary, Takeda California, Inc., entered into a Sponsored Collaboration Research Agreement (the Research Agreement) with Southwestern. Pursuant to the Research Agreement, Takeda provided Southwestern with one of Curadev's STING agonist test compounds (Company Material).

In the Research Agreement, Southwestern described the project as studying "the interaction between the innate immunity adaptor protein STING and small molecule agonists that are developed by Takeda California, Inc." Takeda agreed to supply Company Material to Southwestern for use in conducting a research program. Southwestern agreed not to distribute Company Material to any person or entity other than laboratory personnel at Southwestern. After completion of the research program or termination or expiration of the Research Agreement, Southwestern agreed to destroy all copies of Company Material.

The Research Agreement permitted Southwestern "to present or publish at their own choosing, methods and results of the Research Program under this Agreement." It also contemplated that the parties may disclose confidential information to each other in connection with the work. The Research Agreement defined "Confidential Information" as "any scientific, technical, trade or business information possessed or obtained by, developed for or given to the recipient Party which is treated by the disclosing Party as confidential or proprietary." The Research Agreement noted that the parties would use reasonable efforts to prevent disclosure of the other party's confidential information for five years after receipt. The Research Agreement further provided that any inventions made jointly by

3

Southwestern and Takeda resided with Southwestern and Takeda. Southwestern granted Takeda an option to negotiate a license for any invention six months from the disclosure or discovery of the invention. After six months, Southwestern had the right to license any discovery without obligation to Takeda.

Curadev terminated its relationship with Takeda in April 2020. The Research Agreement between Takeda and Southwestern, by its terms, lasted until September 2, 2021. In October or November 2020, Curadev learned that Bai and Zhang "had generated data showing that Curadev's test compound [Company Material] indeed bound to a unique allosteric transmembrane site on STING." At that time, Appellees "were not aware that Curadev was the inventor of the test compound or of the chemical structure of the test compound or any of Curadev's other compounds."

Bai and Zhang subsequently published a paper on their research indicating potential uses for STING proteins in the treatment of disease. The paper, published in the magazine *Nature*, described how a Curadev compound known as C53 "bound a unique allosteric binding site to promote oligomerization and activation of STING." Curadev alleged that C53 was "taken directly from Curadev's library of compounds and is structurally related to the Curadev test compound provided to [Southwestern] by Takeda."

Curadev sued Appellees alleging misappropriation of trade secrets, conversion, and an unlawful taking under Article I, Section 17 of the Texas Constitution. Curadev alleged that Appellees misappropriated Curadev's trade secrets by continuing to conduct research using Company Material beyond the term of the Research Agreement between Takeda and Southwestern. Appellees answered and filed a plea to the jurisdiction, asserting immunity from suit under the doctrine of sovereign immunity. The trial court granted Appellees' jurisdictional pleas and dismissed all claims asserted against them with prejudice. This appeal followed.

ANALYSIS

In Curadev's first three issues, it argues that (1) a governmental entity's disclosure and destruction of private trade secret property without just compensation constitutes an unconstitutional taking; (2) the trial court erred in granting Appellees' plea to the jurisdiction and dismissing Curadev's constitutional takings claim based on sovereign immunity; and (3) the trial court erred in granting Appellees' plea to the jurisdiction and dismissing Curadev's non-constitutional claims for misappropriation and conversion. In its fourth issue, Curadev asserts the trial court erred in referring the jurisdictional plea to an Associate Judge. We begin with the trial court's ruling on the plea to the jurisdiction.

## I.    Standard of Review

Whether the trial court has jurisdiction is a question of law subject to de novo review. *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding the allegations of jurisdictional facts, or (2) an evidentiary challenge to the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Thus, the "plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id.* at 226–27. The plea must be granted if the plaintiff's pleadings affirmatively negate

the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

When a jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine whether a fact issue exists. *Miranda,* 133 S.W.3d at 227. In evaluating an evidentiary plea to the jurisdiction, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. The plaintiff bears the burden to allege facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). The evidence is reviewed in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228.

Sovereign immunity exists to protect the State and its agencies—including boards, hospitals, and universities—from lawsuits and liability for money damages. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). "Absent a waiver, governmental entities, like Southwestern, are generally immune from suits for damages." *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Est. of Arancibia ex rel. Vasquez-Arancibia*, 324 S.W.3d 544, 546 (Tex. 2010). Therefore, Southwestern and its employees are afforded the same immunity protections as the State. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331–32 (Tex. 2006); *see also* Tex. Educ. Code § 74.101 (Southwestern is "a component institution of The University of Texas

System."); Tex. Gov't Code § 572.002(10)(B) (state agencies include "a university system or an institution of higher education as defined by Section 61.003" of the Education Code).

A plaintiff may overcome a sovereign immunity defense if the plaintiff demonstrates that the Legislature has clearly and unambiguously waived the government's immunity by statute. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 17 (Tex. 2018). Without such a waiver, the trial court lacks subject matter jurisdiction to proceed, and the causes of action alleged against a State agency are barred. *IT-Davy*, 74 S.W.3d at 855. The trial court must dismiss the suit if the plaintiff cannot satisfy the burden of affirmatively demonstrating the trial court's subject matter jurisdiction to hear and decide the case by showing that the causes of action asserted by the plaintiff fall within a statutory waiver of immunity. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023).

## II. The Trial Court did not Err in Granting Appellees' Plea to the Jurisdiction.

Curadev asserted claims for unconstitutional taking, misappropriation of trade secrets, and conversion. We first address whether Curadev's takings claim is precluded by sovereign immunity.

### A. The Takings Claim

The Texas Constitution's takings clause provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person[.]" Tex. Const. art. I, § 17(a). To assert a compensable taking, a plaintiff must allege and ultimately prove that the intrusion has affected property and that the government's conduct constitutes a compensable taking of private property for public use without just or adequate compensation. *Jim Olive Photography v. Univ. of Hous. Sys.*, 624 S.W.3d

7

764, 771 (Tex. 2021).

Other than formal condemnation proceedings, the government can generally take property in two different ways. First, the government can physically appropriate or invade property. *Horne v. Dep't of Agric.*, 576 U.S. 350, 359 (2015) (physical appropriation); *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 38 (2012) (physical invasion); *see also Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 671 (Tex. 2004). Second, the government can regulate property so restrictively or intrude on property rights so extensively that it effectively takes the property. *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017). In either situation, the owner may seek compensation through an inverse-condemnation action against the government. *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 25 (Tex. 2024).

The Texas Constitution waives sovereign immunity with respect to inverse-condemnation claims. *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014). "To plead inverse condemnation, a plaintiff must allege an intentional government act that resulted in the uncompensated taking of private property." *Id.* at 831. A claimant alleging a takings claim under the Texas Constitution must show: (1) an intentional act by a governmental entity, (2) that resulted in a taking of property, (3) for public use. *Self*, 690 S.W.3d at 26; *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). With regard to the first element, the Texas Supreme Court has held that when the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent domain powers and thus retains its immunity from suit. *Holland*, 221 S.W.3d at 643.

If a defendant files a plea to the jurisdiction and establishes that the plaintiff has not alleged these elements and cannot amend its petition to do so, or if the defendant negates one of the elements in an evidentiary plea, the trial court must dismiss the takings claim. *See Self*, 690 S.W.3d at 26 (citing *Carlson*, 451 S.W.3d at

8

830; *Miranda*, 133 S.W.3d at 226–28). "Although the fact-finder may need to 'resolve disputed facts regarding the extent of the governmental intrusion on the property, the ultimate determination of whether the facts are sufficient to constitute a taking is a question of law.'" *Self*, 690 S.W.3d at 26 (quoting *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998)).

The record reflects that Southwestern entered into a Research Agreement with Takeda, to whom Curadev had licensed certain STING agonists. Curadev does not dispute that Southwestern and Takeda had an agreement, nor does it dispute that Takeda provided Company Material to Southwestern under the Research Agreement. Curadev complains of the parties' actions under the Research Agreement, i.e., using Curadev's test compound for other purposes and failing to destroy the test compound upon termination of the Research Agreement. When the State acquires property through its contractual capacity, however, there is no valid takings claim. *See Gen. Sers. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001) (when the State acts under a contract, it only has an intent to act within the scope of the contract, not intent to take under its eminent domain powers).

The crux of Curadev's takings claim is that Southwestern used Company Material it acquired by agreement, which led to its published discovery about the compound C53. Curadev cannot show Southwestern waived sovereign immunity by exercising its eminent domain power because Southwestern acquired Curadev's test compound—Company Material—through a valid contract with Takeda. Therefore, Curadev failed to demonstrate the first element of a takings claim, which is intent to exercise eminent domain.

Curadev contends that the rationale in the cases finding no taking when the State is operating under color of contract does not apply to Curadev's takings claim because Curadev did not have a contract with Southwestern. Curadev's arguments

were rejected by the Supreme Court in *State v. Holland*. In that case, Holland developed a process to clean oil-contaminated bilge water. 221 S.W.3d at 641. The State contracted with third parties—Holland's companies—for assistance in designing filtration units using the process. *Id.* The units were constructed, and Holland's companies were paid pursuant to the terms of the contract. *Id.* Holland later received a patent on the process and began demanding payment of patent royalties from the State. *Id.* at 641–42. When the State refused to make additional payments, Holland sued the State alleging that the State's use of his patented process constituted a taking of his property in violation of the Texas Constitution's takings clause. *Id.* at 642

The State asserted that it was acting under color of contract and, therefore, lacked intent to take under its eminent domain power. *Id.* at 643. Holland responded that he had no contract with the State, so the State's use of his patent was unauthorized. *Id.* The State argued that the fact that its contracts were with Holland's companies and not Holland was immaterial because the focus was whether the State had the requisite intent to take property thereby invoking its eminent domain power. *Id.*

The Texas Supreme Court agreed with the State, concluding that the "absence of an express contract between Holland and the State, or uncertainties about the existence of an implied contract between them, are immaterial to determining the capacity in which the State is acting." *Id.* Noting that the State had accepted Holland's product and his services under color of its contracts with his companies and, therefore, lacked the requisite intent to take Holland's process under its eminent domain power, the Court held that the State was not subject to liability under the takings clause. *See id.* at 644.

Applying the reasoning in *Holland* to this case, Southwestern had a contract

10

with a third party, Takeda. Takeda provided Southwestern with Company Material, which Curadev alleges was its trade secret. Reviewing Curadev's pleadings and accepting them as true, Curadev cannot show that Southwestern had the requisite intent to take under its eminent domain power even if Southwestern had no contract with Curadev. As the *Holland* court recognized, the proper inquiry is whether the government acted "akin to a private citizen." *Id.* at 643. Southwestern acquired the Company Material through a valid contract with Takeda; it therefore lacked intent to commit an intentional taking without compensation. The question is not with whom Southwestern contracted, but whether it had the requisite intent to exercise its eminent domain power. *See id.* at 644. ("Lacking the requisite intent to take Holland's patented process under its eminent-domain powers, the State is not subject to liability under article I, section 17 of the Texas Constitution.").

Curadev further contends that the Supreme Court's decision in *Texas Department of Transportation v. Self* controls our analysis of the intent element. In *Self*, the Texas Department of Transportation (TxDOT), while working on a highway maintenance project, mistakenly cut down trees that were not in the highway easement but were on the Selfs' property. 690 S.W.3d at 17–18. The Supreme Court held that TxDOT was not entitled to sovereign immunity because it intentionally took the Selfs' property by cutting down their trees even if TxDOT thought it was properly exercising its eminent domain powers. *Id.* at 26–32. The key to the holding in *Self* is that the State was exercising its eminent domain powers and did so mistakenly, beyond the terms of its easement. Here, Southwestern was not acting under its eminent domain power at all. It was acting pursuant to a contract and within the terms of that contract. The record reveals no knowledge by the State that a third party, in this case Curadev, had any rights that could be violated by acting under the contract. In reaching its conclusion, the Court specifically recognized that "no

11

compensation is owed when the government acts on its rights under a contract to which the parties have consented because it is not exercising sovereign powers." *Id.* at 27. The decision in *Self*, therefore, does not support Curadev's argument.

Curadev also relies on *Brownlow v. State*, 251 S.W.3d 756 (Tex. App.— Houston [14th Dist.] 2008), *aff'd*, 319 S.W.3d 649 (Tex. 2010), arguing that the court's holding controls in this case. In *Brownlow*, after the State filed a petition to condemn 12 acres of land owned by the Brownlows to construct and maintain a facility to retain water, the parties signed an agreed judgment granting the State an easement on the property to construct and maintain the facility. *Id.* at 759. When the State began to remove dirt at the site and use it at another project, the Brownlows sued the State for inverse condemnation arguing that the soil required an additional condemnation with separate compensation. *Id.* The trial court granted the State's plea to the jurisdiction, and on appeal, the State argued that the Brownlows' inverse-condemnation claim was barred by sovereign immunity because the soil was properly disposed of in the previous condemnation proceeding. *Id.* at 758. The court of appeals disagreed, reasoning that "the soil removed for the purpose of constructing the detention facility was neither subject to the initial condemnation proceedings nor included within the Agreed Judgment." *Id.* at 762. Therefore, the soil remained the property of the Brownlows, and the State waived its sovereign immunity regarding the takings claim. *Id.*

Contrary to Curadev's argument, the court in *Brownlow* did not address whether the State acquired the Brownlows' property under color of contract. In fact, it was clear in *Brownlow* that the State attempted to acquire the property through its eminent domain powers, unlike Southwestern in this case, which acquired the Company Material through a contract with a third party.

Based on the record before us, we conclude Curadev has not affirmatively

12

shown that Southwestern had the requisite intent to take property under its sovereign powers as required for a constitutional takings claim. Southwestern, in using Company Material given to it by Takeda pursuant to the Research Agreement, acquired the test compound by contract, not by its eminent domain powers. Therefore, Southwestern lacked intent to take Curadev's property without compensation and is immune from suit. *See Holland*, 221 S.W.3d at 644 (when the State acquires property in a contractual capacity, there is no valid takings claim). Even if we assume that Curadev's property was improperly used, the remedy is against Curadev's contracting party—not the State.

We conclude the trial court did not err in granting the plea to the jurisdiction on Curadev's takings claim, and we overrule Curadev's first two issues.

## B.    The Tort Claims

In addition to Curadev's takings claim, it asserted tort claims for misappropriation and conversion.

Tort claims against a governmental entity are governed by the Texas Tort Claims Act. Tex. Civ. Prac. & Rem. Code § 101.106; *see also Miranda*, 133 S.W.3d at 224–25 (holding that the governmental entity was immune from suit for a tort unless it was expressly waived by the Tort Claims Act). Therefore, we must look to the terms of the Act to determine the scope of its waiver, and then, we must consider the pleadings before us to determine whether the pleadings come within that scope. *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). The Tort Claims Act waives sovereign immunity for certain negligent conduct, but it does not waive immunity for claims arising out of intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057; *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014). Intentional conduct, no matter how it is pleaded, falls under the Tort Claims Act's sovereign immunity waiver exception. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d

13

575, 580 (Tex. 2001).

Misappropriation of trade secrets and conversion are intentional torts. *See Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 283 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) (misappropriation of trade secrets); *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 361 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (conversion). Because the Tort Claims Act does not waive Appellees' sovereign immunity from suit for Curadev's claims for the intentional torts of misappropriation of trade secrets and conversion, the trial court did not err in dismissing those claims for want of jurisdiction.

## C. Statutory Claim

In regard to Curadev's claim for violations of the Texas Uniform Trade Secrets Act, we note that legislative consent to suit, whether expressed by statute or otherwise, must be "by clear and unambiguous language." *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). The Uniform Trade Secrets Act does not clearly and unambiguously provide for a waiver of immunity from suit for governmental units. *See* Tex. Civ. Prac. & Rem. Code § 134A.001 et. seq. Accordingly, the trial court did not err in dismissing Curadev's statutory claim for want of jurisdiction.

## D. Curadev's Alternative Arguments

On appeal, Curadev does not assert that the Tort Claims Act or the Uniform Trade Secrets Act contain legislative waivers of immunity for its non-constitutional claims. Instead, Curadev asserts that (1) Appellees waived sovereign immunity by conduct; (2) Bai and Zhang cannot assert sovereign immunity for ultra vires acts; and (3) the election-of-remedies provision of the Tort Claims Act does not apply to ultra vires claims. We address Curadev's waiver-by-conduct and joint enterprise

14

theories below, and we address Curadev's arguments about ultra vires conduct and election of remedies separately in Section III.

### 1. Waiver by Conduct

In asserting that Southwestern waived immunity though its conduct, Curadev asserts that Southwestern's conduct of misappropriating its trade secrets was so inequitable that Southwestern should be estopped from asserting sovereign immunity.

Curadev's waiver-by-conduct argument is contrary to binding Supreme Court authority, which instructs that sovereign immunity may not be waived by a party's conduct but only by the Legislature. *Oncor Elec. Delivery Co. NTU v. Wilbarger Cnty. Appraisal Dist.*, 691 S.W.3d 890, 907 (Tex. 2024) ("Of course, subject-matter jurisdiction cannot be conferred by waiver or estoppel.").

In support of its waiver-by-conduct argument, Curadev cites a footnote from *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 408 n.1 (Tex. 1997) in which the Texas Supreme Court reserved judgment on whether circumstances may exist in which the State may waive its immunity. In *Federal Sign*, the Court considered whether the State waives its immunity from suit by entering into a contract with a private citizen for goods and services. *Id.* at 404, 408. The Court concluded that the State's act of contracting does not waive its immunity from suit, so an individual must obtain legislative consent before the individual may sue the State on a breach of contract claim. *Id.* at 408. In a footnote, however, the Court suggested that "[t]here may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." *Id.* at 408 n.1.

In the years since its decision in *Federal Sign*, the Texas Supreme Court has

repeatedly declined requests to recognize a waiver-by-conduct exception in a suit against a governmental entity and has emphasized that waivers of immunity generally should be left to the Legislature. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011); *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Catalina Dev., Inc. v. Cnty. of El Paso*, 121 S.W.3d 704, 705–06 (Tex. 2003); *IT-Davy*, 74 S.W.3d at 857 (creating a waiver-by-conduct exception would defeat many of sovereign immunity's underlying policies). The Court has also expressly rejected the concept that a governmental entity waives its immunity from suit merely by accepting benefits under a contract. *Koseoglu*, 233 S.W.3d at 840; *Tex. A&M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520–21 (Tex. 2002).

As support for waiver by conduct, Curadev cites a First Court of Appeals case in which the court concluded that a governmental entity may waive its immunity from suit by its conduct in "extraordinary factual circumstances." *Tex. S. Univ. v. State St. Bank & Tr. Co.*, 212 S.W.3d 893, 907 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In that case, the court held that sovereign immunity did not shield Texas Southern University from a breach-of-contract claim based on extraordinary factual circumstances, which included evidence that the government officials "lured" the plaintiff into a contract with "false promises that the contract would be valid and enforceable, then disclaimed any obligation on the contract by taking the position that the contract was not valid after all." *Id.* at 908.

The decision in *State Street* contradicts the Supreme Court's statements that the only avenue for waiver of sovereign immunity is through the Legislature. *See IT-Davy*, 74 S.W.3d at 857. We conclude we are bound by Supreme Court authority cited above, which rejects waiver of sovereign immunity by conduct under these circumstances.

16

## 2.     Joint Enterprise

Next, Curadev argues Southwestern waived immunity by engaging in a joint enterprise with Takeda, a private third party. A joint enterprise signifies a legal relationship between two or more parties that imposes the responsibility upon each party for the negligent acts of the other while acting in furtherance of their common undertaking. *See Shoemaker v. Est. of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974). The theory of joint enterprise is related to vicarious liability in that the theory "imputes liability to one who did not do wrong, but who is so closely connected to an active wrongdoer as to justify the imposition of vicarious liability." *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 218 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Relying on the Supreme Court decision in *Texas Department of Transportation. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000), Curadev asserts the Court recognized joint enterprise as an independent basis for waiver of sovereign immunity. Joint enterprise, however, is not an independent basis for waiver of immunity, but it may result in waiver of immunity under the Tort Claims Act where a governmental entity would be liable for another party's negligence if the governmental entity were a private person. *Id.*

Curadev's reliance on the Court's decision in *Able* is misplaced. In *Able*, the survivors of Margaret Able sued TxDOT and the Houston Metropolitan Transit Authority (Metro) for negligence and gross negligence after Able was killed when her car was struck head-on by another car driving the wrong direction in a carpool lane maintained by Metro. *Id.* at 610. The jury found Metro—but not TxDOT— negligent, but it also found that TxDOT had entered into a joint enterprise with Metro. *See id.* TxDOT appealed, arguing that the Legislature had not waived TxDOT's sovereign immunity. *See id*. at 610–11. However, pursuant to the Tort Claims Act, the Legislature had provided for limited waiver of sovereign immunity

for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2). Because the Legislature had expressly consented to a personal-injury suit against a governmental entity, the theory of joint enterprise prevented TxDOT from escaping liability under the doctrine of sovereign immunity. *Able*, 35 S.W.3d at 613. The *Able* Court used the joint enterprise theory, not as an independent basis for waiver of sovereign immunity, but to "bring[] the liability within" the waiver provisions of the Tort Claims Act. *See id*.

Unlike in *Able*, the Legislature has not waived Southwestern's sovereign immunity from suit. *Able* involved legislative waiver of sovereign immunity under the Tort Claims Act, but, as stated above, Curadev's claims asserting intentional torts fall outside the Tort Claims Act. Curadev has not alleged any claims in which Southwestern could be considered liable for Takeda's negligence. Curadev asserted a takings claim in addition to its misappropriation of trade secrets and conversion claims. None of those claims assert Takeda's negligence, nor do they assert Southwestern's negligence. Absent legislative consent to suit, the theory of joint enterprise does not waive Southwestern's immunity from suit. *See id.*

## III. The Trial Court did not Err in Granting Appellees Bai and Zhang's Plea to the Jurisdiction.

In Curadev's amended petition, it alleged, inter alia, that Bai and Zhang acted ultra vires in that they committed the torts of misappropriation and conversion without legal authority. It is undisputed that the allegations against Bai and Zhang arise from the same subject matter as those asserted against Southwestern.

### A. Election of Remedies under the Tort Claims Act

Section 101.106 of the Tort Claims Act requires a plaintiff to make an

irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone. *Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 532 (Tex. 2017). Section 101.106(a), (e), and (f) provide:

> (a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
>
> \*\*\*\*\*
>
> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.
>
> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106(a), (e), (f).

Bai and Zhang argued in the trial court that Section 101.106 barred Curadev's tort claims against them because Curadev sued both Southwestern, a governmental unit, and Bai and Zhang, the governmental unit's employees. Curadev responds, arguing the Tort Claims Act's election-of-remedies provision does not apply to Curadev's allegations that Bai and Zhang acted without legal authority, or ultra vires. In that regard, Curadev alleged that while "many of [Bai and Zhang's] actions were for the benefit of [Southwestern], other of their actions were in furtherance of their own personal benefit."

19

A suit against a governmental employee in an official capacity is effectively a suit against the employing governmental unit, except in those cases alleging the employee has acted ultra vires. *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011). Historically, under the common law, public employees could be individually liable for their own torts, even when committed in the course of employment. *Id.* at 383. To the extent a government employee is not entitled to official immunity, under the common law, the employee's liability could be established in a suit against the employee individually. *Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019).

Section 101.106 of the Tort Claims Act altered the common law by requiring plaintiffs to choose between suing the governmental unit under the Act and suing a responsible employee in an individual capacity. *See* Tex. Civ. Prac. & Rem. Code § 101.106(a)-(f); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008) (recognizing prior version of the Tort Claims Act did not "prevent a plaintiff from pursuing alternative theories against both the employee and the governmental unit through trial or other final resolution."). Section 101.106 requires a plaintiff "to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Garcia*, 253 S.W.3d at 657. On the public employee's motion, Section 101.106(e) compels an election that makes suit against the governmental employer the exclusive remedy for a public employee's conduct within the scope of employment. *Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 352 (Tex. 2013). "[S]ection 101.106(f) essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the governmental employer." *Garza*, 574 S.W.3d at 400.

Bai and Zhang's motion to dismiss invoked the statutory right to dismissal under Section 101.106, which mandates dismissal when a suit against a

governmental employee based on conduct within the general scope of employment could have been brought under the Tort Claims Act against the governmental unit. *See* Tex. Civ. Prac. & Rem. Code § 101.106. By pleading tort claims against both Southwestern and its employees that were premised on the same subject matter, Curadev made an irrevocable election to pursue a vicarious liability theory against Southwestern. *See Rios*, 542 S.W.3d at 538–39. The Tort Claims Act's election-of-remedies scheme governs all suits against a governmental unit. *Garcia*, 253 S.W.3d at 654. Therefore, Section 101.106 of the Act required dismissal of Curadev's tort claims against Bai and Zhang upon the filing of Southwestern's motion. *See Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 399 (Tex. App.—Fort Worth 2008, no pet.) ("whether a plaintiff sues a governmental employee in the employee's official or individual capacity is irrelevant under the applicable subsections of section 101.106.").

## B. Ultra Vires Claims

In attempting to assert ultra vires claims, Curadev alleged that Bai and Zhang acted outside the scope of their employment and committed acts that were in furtherance of their own personal benefit. Such allegations, however, are not claims of ultra vires conduct; they are an attempt to allege individual claims against Bai and Zhang.

An ultra vires claim is a claim against an official in his official capacity, seeking prospective injunctive relief to control State action. *Hall v. McRaven*, 508 S.W.3d 232, 240 (Tex. 2017). As such, "an ultra vires suit must lie against the allegedly responsible government actor in his official capacity." *Id*. (quotations omitted). Curadev has not asserted that Bai and Zhang, while acting in their official capacities, exceeded their statutory authority. Curadev attempts to sue Bai and Zhang individually for acts allegedly taken outside the scope of their employment.

21

Such a claim against Bai and Zhang in their individual capacities does not assert an ultra vires claim.

Though Curadev argues that its pleadings clearly state that Bai and Zhang acted without legal authority, merely asserting legal conclusions or labeling a party's actions as "ultra vires" or "without legal authority" is not sufficient—"what matters is whether the facts alleged constitute actions beyond the governmental actor's statutory authority, properly construed." *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.). "Ultra vires suits are subject to certain qualifications." *City of Houston v. Hous. Mun. Empls. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018). One such qualification is that failing to comply with a contract does not give rise to an ultra vires claim. *Id.* Another is that ultra vires claimants are only entitled to prospective injunctive relief as measured from the date of injunction. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 374–77 (Tex. 2009).

In addition to Curadev's claims for damages, it sought an injunction prohibiting Southwestern, Bai, and Zhang from disclosing Curadev's trade secret information or using any information derived by their use of Curadev's information in research, patent applications, or license attempts. In asserting ultra vires claims, Curadev alleged that "Bai and Zhang were not authorized by [Southwestern] to take Curadev's property by unlawful means, nor were they authorized to fraudulently conceal their wrongful acts by misrepresentations to Plaintiffs." In asserting that Bai and Zhang acted without authority, Curadev asserted that Bai and Zhang "circumvented the confidentiality restrictions" in the contract between Southwestern and Takeda, and "continued their research" beyond "termination of the Agreement." Curadev's allegations that Bai and Zhang acted individually beyond contractual authorization fail to state an ultra vires claim. *See City of Houston*, 549 S.W.3d at

576. (failing to comply with a contract does not give rise to an ultra vires claim). The facts alleged by Curadev do not constitute actions by governmental actors in their official capacity. We conclude the trial court did not err in granting the plea to the jurisdiction on Curadev's tort claims, and we overrule Curadev's third issue.

**IV.    The Associate Judge's Ruling Became the Decree of the District Court Thirty Days After the Order was Signed by the Associate Judge.**

In Curadev's fourth issue, it asserts the trial court erred in referring the jurisdictional plea to an Associate Judge. When Curadev learned that its plea to the jurisdiction was to be heard by an Associate Judge, it filed an objection and requested that the Presiding Judge hear the plea. The Presiding Judge did not rule on Curadev's objection and set the plea for a hearing before the Associate Judge. When the hearing was reset, Curadev renewed its objection to the Associate Judge. The Associate Judge held a hearing and granted the pleas to the jurisdiction on December 16, 2024. In asserting this issue on appeal, Curadev requests that any remand be to the Presiding Judge, not the Associate Judge.[2]

A district court or statutory county court may refer any civil case or portion of a civil case to an Associate Judge. Tex. Gov't Code §§ 54A.101, 54A.106. Section 54A.108(a) lists an Associate Judge's powers, which include conducting hearings, compelling production of evidence, and "tak[ing] action as necessary and proper for the efficient performance of the duties required by the order of referral." *Id.* § 54A.108(a). Subject to objection by a party, an Associate Judge may also hear a trial on the merits. *Id.* § 54A.106(b).

Parties to a hearing conducted by an Associate Judge may seek review by the referring district court of the decision by filing an appeal under Section 54A.111 or

_____

[2] We address Curadev's issue although its requested relief is foreclosed by this Court's disposition.

requesting a de novo hearing under Section 54A.115. *Id.* §§ 54A.111(b), 54A.115(a). The action of the Associate Judge becomes the decree of the referring court if the referring court does not modify, correct, reject, reverse, or recommit an action to the Associate Judge within thirty days of the action being taken. *Id.* § 54A.117.

Here, Curadev did not appeal the Associate Judge's ruling or request a de novo hearing before the referring court. Curadev chose to appeal the ruling to the court of appeals. Curadev therefore waived its right to a de novo hearing or appeal to the referring court, and the Associate Judge's order became "the decree of the court" upon expiration of thirty days. *See* Tex. Gov't Code § 54A.117. We hold that Curadev waived its earlier objection to the Associate Judge by failing to appeal that ruling to the referring court and overrule Curadev's fourth issue.

## CONCLUSION

Having overruled each of Curadev's issues on appeal, we affirm the trial court's dismissal.

<u>/s/ April Farris</u>
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris (Brister, C.J., concurring and dissenting).